In the Matter of Sheryl Ann TRAPP, Dee Ann Trapp, and Duane Edwin Trapp.

Robert Emery Trapp, Father, Linda Mae Trapp, Mother and Appellant,

David L. and Judy E. Bridgeman, Intervenors-Respondents.

No. 61076.

Supreme Court of Missouri, En Banc.

Jan. 15, 1980.

Rehearing Denied Feb. 11, 1980.

James L. Muller, Kansas City, for appellants.

William J. Cason, Michael X. Edgett, Fred R. Bunch, Clinton, William L. Curry, Juvenile Officer, Clinton, for intervenors-respondents.

WELLIVER, Judge.

The appellant, Linda Mae Trapp, is the natural mother of three children who are presently in the legal custody of the Missouri State Division of Family Services. She appeals from the judgment of the juvenile division of the Circuit Court of Henry County entered September 25, 1978, overruling her motions to set aside a custody order entered January 2, 1973, and a child support order entered February 27, 1973. She also appeals from the order allowing the foster parents (the Bridgemans, intervenors-respondents) to intervene in the proceedings. Appellant alleges error in the denial of her motions on the ground that the court had no jurisdiction to enter the original custody and support orders and on the ground that the statutes providing the juvenile court with jurisdiction in neglect proceedings are unconstitutional both on their face and as applied to appellant. Appellant also contends that permitting foster parents to intervene in the custody proceedings is without basis in either Rule 52.12 or the Juvenile Code because they do not have a legal interest that would be affected by the proceedings and because their participation would be unfair and against public policy. That portion of the September 25, 1978, order that overruled appellant's motions to set aside the 1973 custody and support orders will be affirmed; the portion that sustained respondents' motion to intervene will be reversed.

On December 19, 1972, the juvenile officer of Henry County, Missouri, filed a petition in the Henry County Juvenile Court alleging that four of appellant's children, Robert Emery Trapp, Sheryl Ann Trapp, Dee Ann Elaine Trapp and Duane Edwin Trapp, were under the age of 17, physically present in Henry County, Missouri, and in need of care and treatment under the supervision of the court because:

(a) The parents or other persons legally responsible for the care and support of the children have neglected and refused to provide proper support, education which is required by law, medical, surgical or other care necessary for the well being of said child[ren].

(b) The child[ren] are otherwise without care, custody or support.

(c) The behavior, environment or associations of the child[ren] are injurious to [their] welfare or to the welfare of others.

On December 22, 1972, the juvenile court entered its temporary order finding that the facts alleged in the juvenile officer's neglect petition were true and "that the best interests of said children require" that the Division of Welfare be given temporary custody of the children. Accordingly, the court granted temporary custody of the four children to the Division of Welfare and ordered that a hearing on the neglect petition be held on January 2, 1973, and that the parents be notified and summoned to appear.

On January 2, 1973, appellant appeared personally and through her court-appointed attorney, and evidence on the neglect petition was heard. On the same day, the court entered the following findings and order:

The Court finds the four children herein are neglected children within the meaning of the law and are in need of the care and protection of the State of Missouri and are hereby made wards of this Court until further order. Said children's care, custody and control is hereby vested in the Welfare Department of Henry County, Missouri, until further order of this Court.

No stenographic notes or recordings were requested or made of the hearing of January 2, 1973, but from the transcript of subsequent proceedings filed with this court, it is clear that evidence was presented to support a finding of neglect. In November of 1972, Duane Edwin Trapp, then two months old, was diagnosed as suffering from dehydration. In mid-December, Robert Emery Trapp, then nearly five years old, was ad-

mitted in critical condition to the Clinton hospital with severe dehydration and acute streptococcal pneumonia in both lung fields. In November, the Trapps were living in a four-room house that had no running water and was heated only by a small Coleman cooking stove. The three older children were seen dressed only in undershorts, although the weather was beginning to turn cold. In December, the Trapps moved to a two-room condemned hunting cabin located in an isolated area.

On February 27, 1973, the trial court entered a judgment for $198 per month child support against appellant and her husband, on the finding that both "are gainfully employed" and ordered that this amount be garnished from their wages. A motion for rehearing on the custody order was filed March 16, 1973, and was overruled after a hearing on March 26, 1973. No appeal was taken from these custody and support orders.[1]

On October 28, 1975, the court entered an order returning custody of the appellant's eldest son, Robert Emery Trapp, to her and her husband, and his custody is therefore not involved in this appeal. The record is further complicated by numerous other proceedings wherein respondents and the foster parents caring for the other Trapp children sought to adopt the children. None of those proceedings directly relate to the issues herein.

On December 27, 1975, appellant and her husband filed a motion to set aside the January 2, 1973, custody order and the February 27, 1973, support order, and in the alternative for a hearing to return custody of the children to them. This motion alleged that the custody and support orders were void because of jurisdictional and constitutional defects, and that appellant and her husband were fit and qualified to be given custody of the three children still in foster care.

On May 22, 1978, appellant alone filed a motion to set aside the custody order of January 2, 1973, and to dismiss the neglect petition. This motion did not allege that appellant was fit to have custody of the three children returned to her, but alleged that the juvenile court had no jurisdiction to enter the custody order and that the statutes on which the orders were based (§§ 211.031 and 211.181, RSMo 1978) violated the due process clause of the fourteenth amendment to the United States Constitution. On May 30, 1978, appellant filed a motion challenging the validity of the support order of February 27, 1973, alleging that the support order exceeded the juvenile court's jurisdiction under § 211.241, RSMo 1978 and violated the due process clause of the fourteenth amendment to the United States Constitution. Appellant alleged that the support order was entered without prior notice to the parents and without a hearing into or an express finding of the parents' ability to pay.

On June 7, 1978, respondents filed their third motion to intervene in proceedings on appellant's motion to set aside the 1973 custody and support orders. In the motion to intervene, respondents alleged that they had been caring for Sheryl Ann Trapp as foster parents for several years and that they desired to adopt her. Respondents alleged that they had a direct and substantial interest in the custody proceedings because the court's ruling could prevent them from petitioning for Sheryl Ann's adoption. Appellant opposed the motion to intervene.

On September 14, 1978, appellant gave notice that on September 25, 1978, she would call up for hearing and disposition in the Circuit Court of Henry County six motions then pending in the neglect proceeding:

---

1. In a related case, *In re Trapp*, 528 S.W.2d 489 (Mo.App.1975), appellant and her husband did appeal a judgment of the Henry County Juvenile Court dated April 29, 1974, which terminated their parental rights to the four children. The court of appeals reversed that judgment on the ground that the evidence adduced in the termination hearing was insufficient to satisfy the statutory requirements for termination of parental rights found in § 211.441, RSMo 1969. The court found that the juvenile authorities had failed to show by clear, cogent and convincing evidence that appellant or her husband had abandoned, wilfully neglected, or wilfully refused to provide support for the children.

(1) Parents' Motion to Set Aside Ex Parte Order Granting Motion to Intervene and Making Intervenors Parties (filed herein on June 15, 1976); (2) Parent's Motion to Dismiss Petition to Intervene Which Petitioners David L. and Judy E. Bridgeman Were Granted Leave to File Herein on February 25, 1977 (filed herein on March 28, 1978); (3) Bridgemans' Motion to Intervene in Matter of Parents' Motion to Set Aside Orders in Child Neglect Proceeding (filed herein on June 7, 1978); (4) Parents' Motion to Set Aside Custody Order of January 2, 1973, and to Set Aside Support Order of February 27, 1973 (filed herein on December 27, 1975); (5) Parent's Motion to Set Aside Custody Order of January 2, 1973 and to Dismiss Neglect Petition (filed herein on May 22, 1978); and (6) Parent's Motion to Set Aside Support Order of February 27, 1973 (filed herein on May 30, 1978).

At the hearing held on September 25, 1978, the court overruled appellant's motions to set aside the custody and support orders, and granted respondents' motion to intervene. Appellant thereafter filed notice of appeal to this court, alleging that the appeal involves construction of the federal or state Constitutions.

██ The first question here presented is whether or not the orders of September 25, 1978, constituted final judgment for the purposes of appeal. From the record, it is apparent that the trial court did not dispose of the alternative count in appellant's December 27, 1975, motion that requested a hearing into appellant's fitness to regain custody of the children. The transcript of the September 25 hearing indicates that the court offered to proceed with a hearing into the facts and circumstances surrounding appellant's claim of fitness to regain custody of the children and that both parties declined to present evidence on the issue at that time. In this state of the record, the rulings of the court in effect disposed of all issues. We have concluded that in this instance and on these facts there are strong reasons for treating the September 25 orders as final and appealable. The validity of the juvenile court's custody orders has been the subject of litigation for nearly seven years. Seven years is a long time for three young lives to be suspended in such an uncertain status. In order to expedite final resolution of this litigation, we shall treat the judgment and order disposing of the jurisdictional, constitutional and intervention issues in this case as a final judgment for purposes of appeal.[2] Since we have no information about present conditions bearing on the fitness of appellant to have custody of the children awarded to her, we do not rule on the appropriateness of modifying the juvenile court's custody orders. Nothing in this opinion should be

---

**2.** *In re Beste*, 515 S.W.2d 530 (Mo.1974) concerned the right of prospective adoptive parents to custody of a child under the supervision of the Division of Family Services. The Court noted that

[a]ppellant asserts presence of questions involving construction of the Constitution of the United States and of this state. Jurisdiction on that ground is doubtful; however, this case involves the welfare of an infant, and it is retained for decision in the interest of an early resolution of her situation. See Order, Supreme Court, en banc, April 9, 1973; *In Interest of W.H.J., Jr.,* 511 S.W.2d 795 (Mo.1974).

*Id.* at 531. *In re W.H.J., Jr.,* 511 S.W.2d 795 (Mo.1974) concerned the attempt by natural parents of a child to revoke their consent to its adoption. This Court noted that the natural parents asserted the presence of questions involving the construction of the Constitution of the United States and of this state, and stated

[j]urisdiction on that ground is, at most, arguable; however, the case involves the welfare of an infant and his relationship to his parents and others, and it is retained for decision in the interest of an early resolution of those interests. See Order, Supreme Court en banc, April 9, 1973.

The instant case, no less than *In re Beste* and *In re W.H.J., Jr.,* involves the welfare of infants and their relationship to their parents and others. This appeal alone has taken over fifteen months to resolve. Dismissal of this case for a hearing into the fitness of the natural parents to regain custody without resolving the jurisdictional, constitutional and intervention issues involved could result in still further delay, if those issues are raised in a subsequent appeal. We retain the case for decision to facilitate early resolution of the interests of the children and parents involved.

taken to limit appellant's right to an evidentiary hearing on the issue of her present fitness to regain custody, pursuant to § 211.251, RSMo 1978 and Rule 121.01.

This appeal presents three questions: (1) did the trial court have jurisdiction under § 211.031, RSMo 1978 to enter the custody order of January 2, 1973, and the support order of February 27, 1973; (2) are the statutory provisions on which the juvenile court's action in entering those orders was based valid on their face and as applied to appellant; and (3) did the trial court err in granting respondents' motion to intervene in the custody proceedings? We will discuss each question *seriatim*.

### I.

The grounds on which appellant alleges the trial court acted outside of its jurisdiction when it entered the custody order of January 2, 1973, may be grouped into four categories: insufficiency of the neglect petition; insufficiency of the juvenile court's findings under § 211.181, RSMo 1978; insufficiency of the juvenile court's findings under the federal Constitution; and insufficiency of the evidence to support the custody order. Each of these grounds will be discussed in this section.

The appellant alleges first that the neglect petition was insufficient to vest the juvenile court with jurisdiction to enter custody orders because the neglect petition was couched in the conclusory language of § 211.031.1(1) RSMo 1978 and thus violated the requirement of § 211.091, RSMo 1978 and of the due process clause of the fourteenth amendment to the United States Constitution that a neglect petition state facts.

Appellant's contention that due process requires that a neglect petition state partic-

ular facts rests on her analysis of *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *Gault* reversed the dismissal by Arizona courts of a petition for a writ of habeas corpus filed by the parents of Gerald Gault. Gerald had been adjudged delinquent in proceedings initiated by a petition which "made no reference to any factual basis" for the charge of delinquency. The petition alleged only that "said minor is under the age of eighteen years, and is in need of the protection of this Honorable Court; [and that] said minor is a delinquent minor." *Id.* at 5, 87 S.Ct. at 1432. Neither Gerald nor his parents were served with the petition before the hearing on the merits of the delinquency charges. The court held that notice to the child and to his parents in a delinquency proceeding must comply with due process standards, must afford the child and his parents a reasonable opportunity to prepare a defense to the charges, and "must 'set forth the alleged misconduct with particularity.'" *Id.* at 33, 87 S.Ct. at 1446. The degree of particularity that is due in a custody proceeding where neglect is alleged was not before the court in *Gault*.[3]

The standards for the constitutional adequacy of notice in a neglect proceeding may be found in cases to which *Gault* makes footnote reference. "For application [of the due process requirement of adequate notice] in a civil context, see, *e. g., Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)." 387 U.S. at 33 n. 53, 87 S.Ct. at 1447 n. 53. The notice required is that "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong*, 380

---

3. The Court expressly limited the scope of its holding to the context of delinquency proceedings:

We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. . . . We consider only the problems presented to us by this case. These relate to the proceedings by which a determi-

nation is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. 387 U.S. at 13, 87 S.Ct. at 1436. None of the Trapp children have been charged with delinquency, nor have they risked or suffered confinement in a state institution.

U.S. at 550, 85 S.Ct. at 1190; *Mullane,* 339 U.S. at 314, 70 S.Ct. 652. We think the neglect petition in this case satisfies the notice requirements of due process under this test. The petition served on the appellant was adequate to notify her of the pendency of the custody proceeding. The petition made clear that the charges against which the parents would need to defend were those of neglect to provide proper support, of neglect to provide medical or other care necessary for the children's well-being, or of maintaining an environment injurious to the welfare of the children or others.

■ It is apparent that § 211.091, RSMo 1978 raises more stringent requirements for the contents of a neglect petition than are raised by the notice requirements of constitutional due process.[4] The precise question whether a neglect petition couched in the language of the statute defining the juvenile court's jurisdiction is adequate to vest the court with jurisdiction to enter custody orders, has been addressed in several reported decisions in other states. Such a petition was held adequate in *Ball v. State,* 137 Ga.App. 333, 223 S.E.2d 743, 745 (1976); *Shriner v. Simmons,* 483 S.W.2d 324, 326 (Tex.Ct.App.1972); *In re Three Minor Children,* 110 R.I. 11, 289 A.2d 434, 435 (1972); and *Lennon v. State,* 193 Kan. 685, 396 P.2d 290, 293 (1964). *Contra, In re Hunt,* 46 Ohio St.2d 378, 348 N.E.2d 727, 729 (1976); *Matter of Appeal in Pima County, Juvenile Action No. J–46735,* 25 Ariz.App. 424, 544

P.2d 248, 249 (1976). In *In re Three Minor Children* the Child Welfare Services division of the Rhode Island Department of Social Welfare filed petitions in the Family Court alleging that each of three children "is neglected due to lack of proper parental care and guardianship." 289 A.2d at 435. A neglected child is defined by Rhode Island statute as one "who has not the proper parental care or guardianship." R.I.Gen. Laws § 14–1–3(H) (Supp.1978). A provision similar to § 211.091, RSMo 1978 required that "[t]he petition shall state plainly the facts which bring said child within the provisions of this chapter," R.I.Gen. Laws § 14–1–12 (1970). The appellant contended, as the appellant contends in the case before us, that the petitions violated the notice requirements of due process and the statutory requirement that the neglect petition state facts. The Supreme Court of Rhode Island held that the petition satisfied due process notice requirements and that "appellant's contention that each petition alleges only a conclusion is without merit, the conclusion being that the children are neglected and the allegations as to lack of proper parental care and guardianship being allegations of fact in support of that conclusion." 110 R.I. at 13, 289 A.2d at 435. We find that the neglect petition in the instant case stated facts sufficient to vest the juvenile court with jurisdiction to act.

■ The juvenile court predicated its custody order of January 2, 1973, on the

---

4. Section 211.091, RSMo 1978 provides:
 1. The petition shall be entitled "In the interest of ............, a child under seventeen years of age".
 2. The petition shall set forth plainly:
 (1) The facts which bring the child within the jurisdiction of the court;
 (2) The full name, birth date, and residence of the child;
 (3) The names and residence of his parents, if living;
 (4) The name and residence of his legal guardian if there be one, of the person having custody of the child or of the nearest known relative if no parent or guardian can be found; and
 (5) Any other pertinent data or information.

 3. If any facts required in subsection 2 are not known by the petitioner, the petition shall so state.
 Rule 114.01, which was not in effect at the time the petition was filed in the instant case, specifies more clearly than does § 211.091, RSMo 1978 that a petition in a juvenile proceeding "shall set forth plainly and concisely, with reasonable particularity . . . the facts which bring the juvenile within the jurisdiction of the juvenile court, including the date, place and manner of the acts alleged and the law or standard of conduct, if any, allegedly violated by the acts." Rule 114.01(b)(3). We do not reach the question whether a neglect petition couched in the statutory language in violation of Rule 114.01 is so deficient that it would fail to vest the court with jurisdiction to enter custody orders.

finding .that "the four children herein *are neglected children within the meaning of the law* and are in need of the care and protection of the State of Missouri." (Emphasis added.) Appellant contends that the custody order is "null and void" because the court did not comply with the requirement of § 211.181, RSMo 1978 that a juvenile court make a finding of fact on which the exercise of its jurisdiction is based. Appellant urges that the court's findings are insufficient to comply with § 211.181, RSMo 1978, relying on *State ex rel. Dew v. Trimble*, 306 Mo. 657, 269 S.W. 617 (banc 1924). *Trimble* does not support appellant's position. In *Trimble*, the juvenile court ordered custody of a child be removed from the child's mother and given to the child's father based on the bare finding that the child "is neglected." The court held that the juvenile court's jurisdiction to enter the custody order could not be presumed and did not appear in the record:

> [t]he juvenile court of Jackson county did not find the existence of any specific condition which would have placed the child, Margaret Marty, within the statutory classification of a "neglected child," nor did it find generally that she was a "neglected child" within the statutory definition thereof. It merely found that "Margaret Marty is neglected."

*Id.*, 269 S.W. at 622. Nevertheless, the court indicated in strong dicta that a finding cast in the form used by the juvenile court in the instant case would be sufficient to insulate the juvenile court's custody orders from attack:

> [I]t is competent for the juvenile court to determine in a given case whether a child is a "neglected child" "within the definition thereof" contained in the statute; it is given express authority so to do; and

its finding as to the existence of this jurisdictional fact, when it makes one, is of course conclusive as against collateral attack.

*Id.* We think the finding that the children involved "are neglected children within the meaning of the law and are in need of . . . care. and protection" comports with the jurisdictional basis provided in § 211.031.- 1(1)(a), RSMo 1978.[5]

■ Appellant maintains that a juvenile court in a neglect proceeding is required to make findings of fact in entering custody orders by the due process clause of the fourteenth amendment to the United States Constitution, citing *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). We do not find that the findings of the juvenile court in this case failed to satisfy the requirements of due process as established in the cases cited.

■ Finally, appellant maintains that because there was "total absence" of substantial evidence in the record to support the finding of neglect, the due process clause was violated by the January 2, 1973, custody order, citing *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Cunha v. Brewer*, 511 F.2d 894 (8th Cir. 1975); *Dupree v. Wyrick*, 415 F.Supp. 168 (E.D.Mo. 1976); *Cobb v. Wyrick*, 379 F.Supp. 1287 (W.D.Mo.1974). The cases cited state the settled rule of law that "the sufficiency of the evidence to support a state conviction raises no federal constitutional question." *Cunha*, 511 F.2d at 898. *Accord, Dupree*, 415 F.Supp. at 169; *Cobb*, 379 F.Supp. at 1295. It is only when the record is devoid

5. *In re Interest of J.D.G.*, 498 S.W.2d 786, 788 (Mo.1973), cited by appellant, is not in point. In that case, the Court considered the record finding that a child was "delinquent by statutory rape within the provision of the Juvenile Code." The Court held that the record "contains no finding of fact under § 211.031(1)(c), RSMo 1978 [that the behavior, environment or associations of the child are injurious to his welfare or to the welfare of others]," but that the record "does contain the requisite finding of fact under § 211.031(1)(d) [that the child is alleged to have violated a state law, now § 211.031.1(2)]." The case does not require that a juvenile court refer to the specific subsection of the jurisdictional statute, nor is it authority for holding that the juvenile court in this case failed to find facts on which its exercise of jurisdiction is based under §§ 211.031.- 1(1)(a) and 211.181, RSMo 1978.

of any evidence to support a finding of a criminal defendant's guilt of the crime charged that his conviction and punishment may constitute a deprivation of federal due process. *Garner*, 368 U.S. at 170, 82 S.Ct. 248; *Thompson*, 362 U.S. at 204, 206, 80 S.Ct. 624. The juvenile court in this case stated that Bill Edmonds, a child welfare aide, and Dr. Coleberd, a physician, were present at the January 2, 1973, hearing, and "evidence [was] heard on the petition herein." Appellant admits that Coleberd was "the Trapps' family physician" who had examined all four children in December 1972 and that the welfare aide had visited the Trapp home in November and December of 1972. Although no recording or transcript was made of the hearing, the failure to make a transcript was in conformity with § 211.171.4, RSMo 1978.[6] We cannot conclude from this record that the court's finding of neglect was totally without evidentiary support.

█ Our conclusion that the trial court acted within its jurisdiction when it entered the custody order of January 2, 1973, does not dispose of appellant's contention that the support order entered on February 27, 1973, was invalid. Appellant contends that the support order violates the requirements of § 211.241.2, RSMo 1978[7] and constitutional due process, because "said support order was entered without any prior proceeding in court with regard thereto, without any prior notice thereof to said parents, and without any finding that said parents were able to pay." The record refutes appellant's allegations of irregularity as to this appellant. Appellant was summoned to appear, and did appear in the custody hearing of January 2, 1973. Section 211.241.1, RSMo 1978 authorizes a juvenile court to inquire into the parents' ability to make support payments either in the initial custody proceedings or in subsequent proceedings. After the custody hearing and without further hearing, the juvenile court entered the finding that appellant and her husband "are gainfully employed,"[8] and ordered them to pay $198 per month in support and to assume responsibility for the medical care of the children. Thus, the record shows that appellant was given notice and an opportunity to be heard on the issue of support of the children, and that she was found able to provide such support. We find no ground for holding the support order entered February 27, 1973, invalid as to this appellant.[9]

6. Section 211.171.4, RSMo 1978 provides that "[s]tenographic notes or an authorized recording of the hearing shall be required if the court so orders or if requested by any party interested in the proceeding." No such order or request was made in this case. It should be noted that Rule 117.03, effective August 1, 1976, requires that the juvenile court keep a "complete record of all testimony" in proceedings before it.

7. Section 211.241, RSMo 1978 provides in part:
 1. When the juvenile court finds a child to be within the purview of applicable provisions of section 211.031 it may in the same or subsequent proceedings, either on its own motion or upon the application of any person, institution or agency having the custody of such child, proceed to inquire into the ability of the parent of the child to support it or to contribute to its support. If the parent does not voluntarily appear for the proceeding, he shall be summoned in the same manner as in civil cases and the summons in the case may issue to any county of the state.
 2. If the court finds that the parent is able to support the child or to contribute to its support, the court may enter an order requir-

ing the parent to support the child or to contribute to its support and to pay the costs of collecting the judgment.

8. Appellant refers to the statement in *In re Trapp*, 528 S.W.2d 489, 492 (Mo.App.1975) that the Trapps "both were unemployed at the time of the hearing on the neglect petition January 2, 1973," and were not both employed until sometime in February 1973. This statement, based on ambiguous testimony given in the subsequent termination proceedings, is insufficient to show that the juvenile court had no evidence to support a finding of ability to pay in the initial custody hearing, especially in the light of the fact that "Mr. Trapp deliberately avoided giving information about his employment to avoid garnishment." *Id.* at 493.

9. The wages of the appellant and her husband, Robert, were ordered garnished in execution of the support order. Neither appellant nor her husband appealed from the entry of the support and garnishment orders. It appears from this record that Robert Trapp did not receive notice of the hearing that resulted in the entry of support orders against him. Robert Trapp is

## II.

We turn now to examine appellant's contention that §§ 211.031 and 211.181, RSMo 1978, on which the January 2, 1973, custody orders were based, are unconstitutional both on their face and as applied to appellant. Appellant marshalls a variety of complex arguments to the effect that the statutes violate her rights under the due process clause of the fourteenth amendment to the United States Constitution. In brief summary, appellant contends that (a) the statutes are impermissibly vague and overbroad and fail to give parents fair warning of what conduct is proscribed; (b) the statutes do not require the state to show that more harm is likely to result to a child from permitting the parents to retain the child's custody than from state intervention; and (c) the statutes do not require the state to prove alleged neglect by "clear and convincing evidence." Appellant relies primarily on *Alsager v. District Court of Polk County,* 406 F.Supp. 10 (S.D.La.1975), *aff'd,* 545 F.2d 1137 (8th Cir. 1976) and *Roe v. Conn,* 417 F.Supp. 769 (M.D.Ala.1976). We do not read the cases cited by appellant to require as a matter of due process that neglect statutes embody the standards of harm and of proof urged by appellant.[10] The argument that § 211.031, RSMo 1978 is unconstitutional as applied to appellant is treated in section I of this opinion, *supra.* We will consider in greater detail the claim that the statutes are unconstitutionally vague and overbroad on their face.

 In considering this attack on the constitutionality of duly enacted legislation, we are guided by several well-established principles. A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly and undoubt-

edly violates some constitutional provision. *Americans United v. Rogers,* 538 S.W.2d 711, 716 (Mo. banc 1976), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976); *State ex rel. McClellan v. Godfrey,* 519 S.W.2d 4, 8–9 (Mo. banc 1975); *State v. Crawford,* 478 S.W.2d 314, 316 (Mo.1972), *appeal dismissed,* 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66, *rehearing denied,* 409 U.S. 1051, 93 S.Ct. 536, 34 L.Ed.2d 505 (1972); *Hickey v. Board of Education of City of St. Louis,* 363 Mo. 1039, 256 S.W.2d 775, 778 (1953). A statute violates the due process clause of the fourteenth amendment when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *State ex rel. Eagleton v. McQueen,* 378 S.W.2d 449, 453 (Mo. banc 1964). Impossible standards of specificity are not required. Even in the case of a statute that defines a criminal offense, due process requires no more than that the statute convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Petrillo,* 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947); *State v. Smith,* 431 S.W.2d 74, 78 (Mo.1968).

The fact that the state has a legitimate interest in the custody of neglected children cannot be denied. In *Stanley v. Illinois,* 405 U.S. 645, 649, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972), the United States Supreme Court acknowledged the existence of "[t]he State's right—indeed, duty—to protect minor children through a judicial determination of their interests in a neglect proceed-

---

not a party to this proceeding, however, and appellant is without standing to assert his rights with respect to the support order entered against him. Consequently, we do not reach the question whether the support order is vulnerable to collateral attack on due process grounds by Robert Trapp for failure of notice, or whether successful invalidation of the support judgment entered against Robert Trapp might render the judgment unenforceable as against this appellant.

**10.** Both cases are distinguishable from the present case, as they involved the requirements of due process in the context of proceedings to terminate the parent-child relationship. Neither case purported to state the precise requirements of due process in a custody proceeding based on allegations of neglect. Moreover, neither case involved a record of life-threatening illness and inadequate provision of clothing and shelter such as that presented in this case.

ing." Constitutional challenges for vagueness or overbreadth mounted against statutory neglect standards similar to those in § 211.031, RSMo 1978 have been rejected in other jurisdictions. *In re Interest of Metteer*, 203 Neb. 515, 279 N.W.2d 374, 378 (1979); *Matter of D.T.*, 89 S.D. 590, 237 N.W.2d 166, 169 (1975); *People v. Schoos*, 15 Ill.App.3d 964, 305 N.E.2d 560, 562 (1973); *In re Neglected Child*, 130 Vt. 525, 296 A.2d 250, 254 (1972). The courts in these jurisdictions consider the vagueness question in the light of the purposes which the neglect provisions are designed to accomplish. *Metteer*, 203 Neb. at 518, 279 N.W.2d at 377; *Matter of D.T.*, 237 N.W.2d at 169. The stated purpose of Missouri's Juvenile Courts Chapter "is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." § 211.011, RSMo 1978. "[T]he many diverse circumstances which give rise to a finding of neglect must be considered when the standards embodied in [the statute] are viewed in the light of the due process clause." *Neglected Child*, 130 Vt. at 531, 296 A.2d at 254. "Child neglect is by its very nature incapable of a precise and detailed definition." *Schoos*, 15 Ill. App.3d at 967, 305 N.E.2d at 562.

A challenge to the constitutionality of §§ 211.031 and 211.181, RSMo 1978 similar to that made here was rejected in *Minor Children of F. B. v. Caruthers*, 323 S.W.2d 397 (Mo.App.1959). In *Caruthers*, the court concluded:

> Courts are always reluctant to strike down legislative enactments and when it is asserted that the statute is so indefinite as to result in a denial of due process, we must consider it in the light of the problem with which the legislature was attempting to deal. . . . The statute deals with children in need of care that they are not receiving and this may arise in so many ways that it would be impossible to state them all with great exactitude. The words used have acquired an accepted legal meaning and are therefore not vague and indefinite.
>
> . . . . .

It is our conclusion that the section is not unconstitutional, for it is in effect but a restatement of a jurisdiction long existing in equity. Its application and purpose are known and it is not therefore vague or uncertain and consequently not violative of the due process accorded by the constitution of the State or Federal Government.

*Id.* at 401.

■■■ The specific language considered in *Caruthers* was that of § 211.031.1(1)(b), RSMo 1978. Appellant in this case focuses her attack against § 211.031.1(1)(a) and 211.031.1(1)(c), RSMo 1978. We do not find the neglect standards embodied in § 211.-031.1(1)—"proper support, education which is required by law, medical, surgical or other care necessary for [the child's] well-being," "otherwise without proper care, custody or support," and "behavior, environment or associations . . . injurious to [the child's] welfare or to the welfare of others" —to be so indefinite or susceptible of multifarious interpretation that ordinary persons "must necessarily guess at" their meaning. The neglect standards are sufficiently clear and definite to inform and warn a parent of common intelligence of the level of child care which the state requires and expects.

> The argument of the appellant, carried to its logical extreme, would require that in order for a statute to meet constitutional standards it must contain a precise checklist of parental responsibilities as well as a list of prohibitions. Society does not operate in a historical, social, or moral vacuum. The terms used in the statute, while broad must be interpreted in the light of our history, culture, generally accepted standards of morality, and the common understanding of the behavior of reasonably conscientious and well-intentioned parents.

*Metteer*, 203 Neb. at 520, 279 N.W.2d at 377–78. Appellant's contention that the standards for neglect in § 211.031, RSMo 1978 are unconstitutionally vague and overbroad is without merit and is denied in all respects.

### III.

Appellant contends that the trial court erred in permitting respondents to intervene in this custody proceeding. Respondents are licensed foster parents who presently have physical custody of Sheryl Ann, one of the children whose custody was the subject of the orders under attack. Respondents allege that they desire to adopt the child, and that

> the Court's ruling herein could have the possible effect of terminating their right to Petition for adoption of said child and to merely maintain said child in their home as a foster child. Intervenors are so situated that disposition of this action may as a practical matter impair or impede their ability to protect their interests and their interests will not be adequately represented by the existing parties.

Intervention is granted as a matter of right upon timely application provided the applicant

> claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 52.12(a)(2); § 507.090.1, RSMo 1978. We find that respondents do not have the requisite "interest relating to" the subject of this action to intervene in the proceeding.

The type of interest that is contemplated under Rule 52.12 was analyzed in *State ex rel. Farmers Mutuals Automobile Ins. Co. v. Weber*, 364 Mo. 1159, 273 S.W.2d 318 (banc 1954).

> "Interest," generally, means a concern which is more than mere curiosity, or academic or sentimental desire. One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action.

As used in the above quoted portion of Section 507.090, and in intervention statutes generally, "interest" means a direct and immediate claim to, and having its origin in, the demand made or proceeds sought or prayed by one of the parties to the original action, but such "interest" does not include a mere consequential, remote or conjectural possibility of being in some manner affected by the result of the original action; to come within the above statute, the "interest" must be such an immediate and direct claim upon the very subject matter of the action that intervener [sic] will either gain or lose by the *direct operation* of the judgment that may be rendered therein.

*Id.* 273 S.W.2d at 321 (emphasis in original).

Although Rule 52.12(a) was changed in 1972 to "facilitate the determination of all related disputes in one proceeding, and thereby avoid a multiplicity of actions," *State, etc., v. City of St. Joseph*, 579 S.W.2d 804, 806 (Mo.App.1979); *State ex rel. Hughes v. Smith*, 485 S.W.2d 646, 651 (Mo.App.1972), the change in the rule did not dispense with the requirement that the applicant have an interest in the subject of the litigation. *State, etc., v. City of St. Joseph*, 579 S.W.2d at 806–07.

The subject matter of the neglect proceeding in this case is the current fitness of appellant to regain custody of her children. Respondents' alleged interest in the custody of Sheryl Ann does not meet the requirements articulated in *Weber*. Respondents' allegation that the court's ruling could frustrate their desire to adopt Sheryl Ann is not "an immediate and direct claim upon the very subject matter" of the pending neglect proceeding. Respondents have no right to appeal the judgment in the proceeding. § 211.261, RSMo 1978; *In re Baby Girl B——*, 545 S.W.2d 696, 697 (Mo.App.1976). Respondents will not gain or lose by the direct operation of a judgment in the pending proceedings, and they have no legal right which will be directly enlarged or diminished by the judgment of the juvenile court. The legal right to custody is in the

Division of Family Services; the foster parents retain physical custody as agents of the Division of Family Services. The cost of foster care for neglected children whose legal custody is vested in the Division of Family Services is required by statute to be paid by the Division. § 207.020(17), RSMo 1978. Any claim respondents may have to physical custody of Sheryl Ann does not have its origin in the petition for removal of custody of the child from the natural parents on allegations of neglect. For these reasons, we have concluded that respondents have no right to intervene in the pending custody proceeding.

 Respondents contend that § 452.-485, V.A.M.S.Supp.1979, confers on them an unconditional right to intervene in this proceeding. Section 452.485, V.A.M.S.Supp. 1979, provides that when a court in a child custody proceeding learns "that a person not a party to the custody proceeding has physical custody of the child . . . it *may* order that person to be joined as a party." [11] (Emphasis added.) The term "custody proceeding" is defined for this purpose at § 452.445(2), RSMo 1978, to include an action for child neglect or abandonment in which custody is an issue. We think that § 452.485, V.A.M.S.Supp.1979, does not confer a right on foster parents having physical custody of a child to intervene in a custody proceeding based on allegations of neglect or abandonment of the child by the natural parents. The provision is designed to confer certain powers on the circuit court, but it does not confer a right to litigate the issue of neglect on persons who are not interested under the terms of the Juvenile Courts Chapter, Chapter 211, RSMo 1978. The rights of foster parents are the same under § 452.485, V.A.M.S. Supp.1979, as they were before its enactment.

Sections 452.445 to 452.550, RSMo 1978, are adopted from the Uniform Child Custo-dy Jurisdiction Act (UCCJA). In at least one other state that has adopted the UCCJA provisions cited, it has been held that foster parents have no standing to intervene as parties in a neglect hearing. *Welfare of E. G.*, Minn., 268 N.W.2d 420 (1978). *See* Minn.Stat.Ann. §§ 518A.02(c), 518A.10 (Supp.1979). In *In re E. G.*, the natural mother sought to regain custody of two minor children who had been adjudicated neglected in 1968. Foster parents had cared for one of the children continuously since it was 45 days old, a period of nearly 10 years, and moved to intervene in the proceedings. The juvenile court entered an order permitting the foster parents to intervene, and the natural mother sought a writ of prohibition to prevent the order from taking effect. The Minnesota Supreme Court held that foster parents had no standing to intervene in the proceedings, and granted the writ of prohibition. The court recognized that strong psychological bonds naturally should have developed between the foster parents and the child, and that the foster parents could offer material evidence concerning the spiritual, emotional, mental and physical well-being of the child. Nevertheless, the court held that the Minnesota Juvenile Courts Act "does not contemplate, however, that hearings concerning a neglected child be conducted in an adversary atmosphere." 268 N.W.2d at 422. See *State, by St. Louis County Welfare Department v. Niemi*, 284 Minn. 225, 230, 169 N.W.2d 758, 761 (1969).

There are sound policy reasons for rejecting respondents attempt to intervene in this proceeding. The presence of the foster parents in this action would tend to interject the false issue of the fitness of the foster parents to have custody of the children. The sole issue before the juvenile court in this proceeding is the present fitness of the parents to have custody of their children returned to them. Chapter 211, RSMo

---

11. Although the court's September 25, 1978, order permitting respondents to intervene preceded the effective date (March 6, 1979) of this statute, the same provision, identical except for the omission of the italicized word "may," was enacted by the legislature the previous year, effective August 13, 1978. Laws of Mo.1978, p. 693; § 452.485, RSMo 1978. The omission of the word "may" was apparently an oversight, and its subsequent insertion is strong evidence of the legislative *intent in passing* § 452.485, RSMo 1978.

1978, authorizes removal of custody from parents only when one or more of the statutory conditions is satisfied. The General Assembly has not authorized the removal of children from the custody of their parents on the ground that the children would be "better off" in another home. *See S. K. L. v. Smith*, 480 S.W.2d 119, 125 (Mo.App. 1972).

## IV.

■ Having ruled on all the issues raised by this appeal, we address one further matter. In the case of *In re Trapp, supra* n. 1, the Missouri Court of Appeals, Western District, reversed an order terminating the parental rights of this appellant. Following that decision, the Juvenile Officer filed another termination petition on April 29, 1979. Upon Judge Kyser's refusal to sustain this appellant's application for change of Judge, the Missouri Court of Appeals, Western District, sustained this appellant's right to have a change of judge, and prohibited Judge Kyser from further proceedings on the termination petition. *State ex rel. Brault v. Kyser*, 562 S.W.2d 172 (Mo.App.1978). While the Court there held the petition for termination of parental rights was a separate action for the purpose of determining the right to a second change of judge, that action involved the same parties and the same children as this action.

In the exercise of our general supervisory power over the circuit court, Mo.Const. art. 5 § 4, and in order to avoid any appearance of impropriety, Cannon 2 of the Code of Judicial Conduct, Supreme Court Rule 2, we therefore order Judge Kyser to enter an order disqualifying himself from presiding over further proceedings concerning the custody of these children and upon entry of said order that he request this Court to make assignment of a judge in this matter, and in the unresolved and pending termination matter in the event such assignment has not already been requested. We further order that proceedings concerning termination of the parental rights of the natural parents to the children here involved by

stayed pending disposition of the motion to restore custody to the natural parents.

The order of the trial court of September 25, 1978, granting respondents' motion to intervene in the pending custody proceedings will be reversed. The order overruling appellant's motions to set aside the 1973 custody and support orders will be affirmed.

DONNELLY, RENDLEN and MORGAN, JJ., concur.

BARDGETT, C. J., concurs in part and dissents in part in separate opinion filed.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

HIGGINS, J., dissents in separate dissenting opinion filed.

BARDGETT, Chief Justice, concurring in part and dissenting in part.

I concur in the dissenting opinion of Higgins, J., which holds that there is not a final and appealable judgment in this case and agree that the appeal should be dismissed. Nevertheless, and in view of the fact that the majority of the Court has concluded that there is an appealable order in this case, I file this opinion in order to address other issues discussed in the principal opinion.

In my opinion, the record on appeal in this case clearly demonstrates that the support order entered February 27, 1973, was entered at a time when Mr. Trapp was not a party to the proceedings and had not been served with any process, received any notification, and was not personally present. In these circumstances, I believe that the support order was wholly void as to Mr. Trapp. Likewise, it is my opinion that the order is void as to Mrs. Trapp. She had been served with the original petition alleging neglect and appeared personally at the January 2d hearing. She was indigent so the court appointed an attorney for her that day and a hearing was held, but no stenographic notes were made of it. The court order found the children to be neglected and they were made wards of the court.

with their care and custody placed in the Welfare Department of Henry County. There is no indication in the petition or in the order that any hearing with reference to monetary support orders or ability to pay was held or would be held. The order makes no reference to that matter at all. On February 27, 1973, the record shows a judgment was entered as follows: "Judgment entered against Robert Emory Trapp and Linda Mae Trapp for $198.00 per month child support commencing March 5, 1973. Sheriff to serve parents with a copy of said Order."

On March 5, 1973, the record contains the following entry:

"*Sheryl Ann Trapp, b.d. 4–25–69; Dee Ann Elaine Trapp, b.d. 4–7–70 and Duane Edwin Trapp, b.d. 9–8–72,* all of whom are wards of the court and care and custody of Division of Welfare; the court finds that said children are deprived of proper financial support while in foster care due to the falsification of information on the part of the natural parents of said children.

"Now on this 27th day of February, 1973, the Henry County Juvenile Court hereby orders that Mr. and Mrs. Robert Emory Trapp who are gainfully employed, be made responsible for the financial support of said children in the amount of $198.00 per month or $66.00 per child. Court further orders that this amount be garnisheed from the wages of the parents through the Henry County Circuit Clerk. The court further orders that the natural parents assume responsibility of medical care of said children. This will be in judgment of the court until further order."

"On March 5, 1973, the following record entry appears: 'Summons with Order attached issued to parents and delivered to sheriff of Henry County for service.'

"On March 14, 1973, the following record entry appears: 'Return on service of summons to Robert Emory Trapp and Linda Mae Trapp filed by Sheriff of Henry County.'"

As noted supra, the order of January 2, 1979, which resulted from that hearing contained no support orders, nor is there any indication that there was any evidence with reference to financial ability or any other matter pertaining to failure to support or ability to support heard by the court. There was no further hearing and there was no further notice of any impending hearing or any impending support order served upon Mrs. Trapp on the record before us. The court simply entered up an order on February 27 which it denominated a judgment for $198.00 per month child support against appellant Mrs. Trapp and her husband, Mr. Trapp. Assuming the order of September 25, 1978, overruling appellant's motion to set aside the support order of February 27, 1973, is appealable, it is my opinion, on the record before us, that the order is void because: (1) Mr. Trapp was not a party and received no notice of the proceedings; Mrs. Trapp received no notice of any impending hearing with reference to a money judgment in the form of a support order; (3) the record reflects there was no hearing at all with reference to this matter; and (4) if the order is invalid as to Mr. Trapp then, since it is obviously based upon the combined income of Mr. and Mrs. Trapp, it must of necessity be invalid as to Mrs. Trapp. I do not agree with footnote 8 of the principal opinion that the statement appearing in *In re Trapp*, 528 S.W.2d 489, 492 (Mo.App.1975), was based upon ambiguous testimony or is insufficient to show that the juvenile court had no evidence to support a finding of ability to pay in the initial custody hearing. The record in this case demonstrates a complete lack of evidence to support a finding of ability to pay in either the initial custody hearing or at any other time prior to the entry of the support order. In short, the record shows money judgments entered up against appellant and her husband without due process of law being afforded either of them.

I concur in the holding that §§ 211.031 and 211.181, RSMo 1978, are constitutional on their face and as applied to the appellant. In my opinion, the petition originally filed in this case was general in its allega-

tions. Respondent could have moved to require it to be made more definite and certain with respect to particular charges of neglect but failed to do so.

I concur in parts III and IV of the particular opinion.

SEILER, Judge, concurring in part and dissenting in part.

I concur, except as to the validity of the support order of February 27, 1973, as to which I dissent for the reasons stated by Bardgett, C. J. in his separate opinion.

HIGGINS, Judge, dissenting.

I agree with the discussion which accords constitutionality to these proceedings and §§ 211.031 and 211.181, RSMo, and denies intervention. I do not agree with the discussion validating the support order for the reasons expressed in the dissent of Bardgett, C. J. I dissent from the majority because I do not believe its discussion of any of the issues can be delivered as an opinion of this Court absent jurisdiction upon which to do so.

Premature consideration of the subject matter of this case is premised on the time these children have been within the jurisdiction of the juvenile court. This is not required because the juvenile court with its flexible powers is better equipped to deal with their problems than the courts which deal with fixed rights and permanent status. *In re J____,* 357 S.W.2d 197 (Mo.App. 1962). The public policy of this state is that when jurisdiction over the person of a child has been acquired by the juvenile court for care and treatment because of parental neglect, jurisdiction may be retained, if necessary to his well-being, until the child has attained the age of twenty-one years. §§ 211.031 and 211.041, RSMo. Limitation on the exercise of parental rights in this case may comport favorably with achieve-

ment of the ultimate and most desirable goal of reinstating the natural and normal parent and child relationship. § 211.011, RSMo; *State v. Couch,* 294 S.W.2d 636 (Mo. App.1956).

The majority opinion demonstrates the absence of a final and appealable judgment in this case.[1] Accordingly, this appeal is premature and should be dismissed and the cause remain open for such other and further proceedings in the juvenile court as could be indicated by order of this Court or otherwise. Rules 81.01 and 120.01; §§ 211.-261 and 512.020, RSMo; *Kansas City Power & Light Company v. Kansas City,* 426 S.W.2d 105 (Mo.1968).

---

1. *In re Beste,* 515 S.W.2d 530 (Mo.1974) and *In re W. H. J., Jr.,* 511 S.W.2d 795 (Mo.1974), cited in the majority opinion as support for taking jurisdiction in this case do not lack final and appealable orders. They do not stand for creation of jurisdiction where none exists. They stand for retention of jurisdiction in the Supreme Court where presence of a final appealable order vests jurisdiction in the Court of Appeals or the Supreme Court as the case may be.