**In the Interest of M.N.M., a minor, and J.A.M., a minor.**

**Mary A. ELMORE, Juvenile Officer, Respondent,**

**v.**

**S.A.M., Natural Mother, and her duly appointed Guardian, Beverly Sue Ryan, Appellant.**

**No. WD 35328.**

Missouri Court of Appeals, Western District.

Aug. 28, 1984.

As Modified Nov. 27, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 27, 1984.

Hollis H. Hanover, Popham, Conway, Sweeny, Fremont & Bundschu, P.C., Kansas City, for appellant.

Max Von Erdmannsdorff, Von Erdmannsdorff & Zimmerman, Kansas City, for respondent.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

PER CURIAM.

The Juvenile Officer of Clay County initiated proceedings under §§ 211.447.-2(2)(a)b. ["abandonment"], 211.447.2(2)(b) ["neglect"] and 211.447.2(2)(g)a., b. ["mental condition"], RSMo Supp.1983, to terminate appellant's (hereinafter mother) parental rights in her natural daughter, eleven years old, and her natural son, ten years of age. The natural father consented in writing that his parental rights in both children be terminated. The mother had previously been adjudicated incompetent and was represented by her duly appointed guardian throughout the proceedings.

Separate petitions,[1] differing only in the name of the respective child involved, were filed in the Juvenile Division of the Circuit Court of Clay County on March 29, 1983, alleging in part, with accompanying facts, that the mother had "abandoned" and "neglected" the children "for a period of six months prior to the filing of the Petition[s]." The petition further alleged, in part, that the mother "is so mentally deficient she is unable to form an intent or act knowingly." Following an evidentiary hearing, the trial court terminated the mother's parental rights in both children on the basis of all three statutory grounds relied on by the Juvenile Officer. The mother, acting by and through her guardian, has appealed. Doing so, among other things, serves to emphasize the insuperable nature of the maternal instinct and the pathos permeating this particular case.

Three points relied on by the mother on appeal can be aggregately stated—none of the terminal grounds relied on by the trial court were supported by "clear, cogent and convincing evidence."

Review of judgments terminating parental rights invoke a panoply of stringent rules and principles statutorily and judicially oriented. Collectively, they epitomize a dedicated effort to prevent an arrogation of natural parental rights and the awesome consequences attendant unwarranted termination.

▉ The authority seeking termination of parental rights must prove its case by "clear, cogent and convincing evidence". Section 211.447.2(2), RSMo Supp.1983. Termination must be in the "best interest" of the child. Section 211.447.2, RSMo Supp.1983. Substantial evidence, that is, evidence which, if true, has probative force, is required to meet the burden of proof resting upon the authority seeking termination of parental rights. *In Interest of*

---

1. Although separate judgments were rendered by the trial court, the matters were consolidated for trial and for purposes of appeal.

*J.A.J.,* 652 S.W.2d 745, 748 (Mo.App.1983). Concomitantly, clear, cogent and convincing evidence has been variously described as "that which 'instantly tilt[s] the scales in the affirmative when weighed against evidence in opposition'; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Id.* 748. Deference is given to the trial court's assessment of the credibility of witnesses and its judgment will be affirmed unless it lacks substantial evidence for its support, unless it is against the weight of the evidence, or it erroneously declares or applies the law. *Juvenile Office of Cape Girardeau County v. M.E.J.,* 666 S.W.2d 957, 960 (Mo.App. 1984); and *In Interest of M____ K____ P____,* 616 S.W.2d 72, 80 (Mo.App.1981).

A protracted history of the mother's mental condition plays a dispositive role in this case. The mother had suicidal tendencies as evidenced by the fact she attempted to take her own life on at least two, and possibly three, occasions since early August, 1979. Additionally, she stated on at least one other occasion that she felt "suicidal". The record is also replete with evidence that the mother had a history of drug and alcohol abuse. Moreover, she was "angry", "manipulative" and, in response to a need for professional help, had stated she needed "to be relieved of depression and pill popping."

On December 13, 1982, the mother was "adjudged to be incompetent as defined by the laws of Missouri" by the Probate Division of the Circuit Court of Clay County, Missouri, and the Public Administrator of Clay County, was appointed her guardian. The mother entered the Western Missouri Mental Health Center on the same date and subsequently entered the St. Joseph State Hospital. She was undergoing treatment at the St. Joseph State Hospital when the judgments terminating her parental rights in both children were entered.

Two medical experts testified at the evidentiary hearing regarding the mother's mental condition, and their respective testimony may be fairly summarized as follows. One medical expert testified that the moth-er's prognosis was "guarded", she needed "long-term care", due to her "past history" she presented a possible "danger" to her children, and if and when she might "come back out into society" was speculative at best. The other medical expert testified that he could not say whether her prognosis would be "consistent", i.e. that she wouldn't use "drugs" or "alcohol", or how she would react to stress, he wouldn't recommend that she have the two children because it would present too much stress for her, and if she stopped taking "antidepressant medication[s]" there was an "eighty percent probability" her "violent tendencies" and "suicidal thoughts" were "likely to reoccur." A unanimity of opinion existed between the medical experts as to their ultimate diagnosis of the mother's mental condition—"atypical psychosis" and "borderline personality disorder."

Except for brief, sporadic occasions, the two children have been under the custody and control of others (per court order) since the mother's first suicide attempt in August of 1979.

■ When the apposite rules, principles and facts heretofore iterated are juxtaposed with points one and two, the conclusion is inevitable that "clear, cogent and convincing evidence" was nonexistent to support termination of the mother's parental rights under § 211.447.2(2)(a)b. ["abandonment"], supra, and § 211.447.2(2)(b) ["neglect"], supra. The mother's alleged aberrant conduct must have occurred for a period of "six months or longer ... at the time of the filing of the petition" as to "abandonment", § 211.447.2(2)(a)b., supra, and for a period of "six months prior to the filing of the petition" as to "neglect", § 211.447.2(2)(b).

■ For approximately half of the six-month period prior to the filing of the termination petition in question, the mother was legally adjudicated incompetent, under guardianship, and receiving care and treatment in state mental institutions. For a long period of time prior thereto she was symptomatic, to say the least, of some type of adverse mental condition. Knowledge

and intent are prerequisites of "abandonment" and "neglect" and "presuppose a mental capacity sufficient to form such an intent and to knowingly transgress that which is prohibited." *In Re Baby Girl A———,* 481 S.W.2d 602, 604 (Mo.App. 1972). It defies credulity to say that "clear, cogent and convincing evidence" exists to support termination of the mother's parental rights in her two children under §§ 211.447.2(2)(a)b. ["abandonment"] and 211.447.2(2)(b) ["neglect"], supra. The extent of the mother's mental problems for approximately half of the six-month period prior to the filing of the termination petition in question, and for a long standing period prior thereto, decries any semblance of "clear, cogent and convincing evidence" that she possessed adequate mental capacity to form the requisite intent to "abandon" or "neglect" her children in the context of §§ 211.447.2(2)(a)b. and 211.447.-2(2)(b), supra. Per force, termination of the mother's parental rights in her two children cannot stand on the basis of "abandonment" and "neglect".

■ If the juvenile court's termination of the mother's parental rights under § 211.-447.2(2)(g)a., b. ["mental condition"] is impregnable, legally and factually, then the judgment of the juvenile court must be sustained even though unsustainable on grounds of "abandonment" and "neglect". *In Interest of Gowen,* 610 S.W.2d 319, 320 (Mo.App.1980).

Section 211.447.2(2)(g)a., b. reads as follows: "(g) The parent has a mental condition which: a. Renders him unable to form an intent to act knowingly; and b. Is shown by competent evidence to be permanent or *that there is no reasonable likelihood that the condition is reversible,* and such parent has substantially and repeatedly neglected the child or failed to give the child necessary care and protection." (emphasis added) The statute provides alternate avenues to prove the continuing nature of the requisite mental condition.

■ Beyond peradventure, "clear, cogent and convincing evidence" was adduced to support the finding by the Juvenile Court that the mother suffered from a mental condition which rendered her unable to "form an intent to act knowingly" and that she had "substantially and repeatedly neglected" the children and "failed to give" them "necessary care and protection."

Whether "clear, cogent and convincing evidence" was adduced to justify the juvenile court's finding that there was "no reasonable likelihood" that the mother's extant mental condition was "reversible" poses a more crucial question. Her longstanding conduct symptomatic of a mental condition, her recent adjudication of incompetency and confinement in state mental institutions for care and treatment, and the prognosis of the medical experts, compel this court to conclude that "clear, cogent and convincing evidence" existed to support the finding of the juvenile court that there was "no reasonable likelihood" that the mother's "mental condition" was "reversible". The record is permeated with substantial evidence that the mother, unfortunately, was unable to function normally outside a stress free, structured environment. The vicissitudes of every day life presented too much stress for her to cope with or handle. There can be no real or serious doubt that the interests of the two children will best be served by placing them in a normal, consistent environment. Needless to say, every effort should be bent in that direction.

Counsel for the mother, by way of a post appeal motion, implores this court to remand the case to the trial court to hear further evidence regarding prognosis of the mother's mental condition. The motion was ordered taken with the case. After careful perusal and analysis, this court reluctantly concludes that to grant the motion would only serve to prolong the inevitable to the detriment of both the mother and the children. The contents of the motion are speculative and, at best, fail to dispel the mother's inability to cope with the inexorable stress associated with parental responsibility. Unfortunately, varying degrees of social stress seem to be the rule rather than the exception in today's society

and halcyon days are largely visions of the past.

Regardless of how much this court may empathize with the mother, it must steel itself and, in accordance with the dictate of the statute, do that which best serves the interests of the children. Accordingly, the respective judgments terminating the mother's parental rights in the two children are affirmed.

Judgments affirmed.