In the Interest of M—— K—— P——, Female, Age 5.

**Appeal of Cary Jay and Pamela Jean ADAMS.**

**No. WD 31583.**

Missouri Court of Appeals, Western District.

March 30, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1981.

Thomas J. Marshall, Public Defender, Moberly, for appellants.

Kenneth D. Kyser, Moberly, for respondent.

Before MANFORD, P. J., WASSER-STROM, C. J., and NUGENT, J.

MANFORD, Presiding Judge.

This is an appeal from a judgment in the form of an order terminating parental rights pursuant to Chapter 211, RSMo 1978. The judgment is affirmed.

Appellants allege four trial errors, which in summary declare (1) the order was based upon grounds not contained in the petition; (2) the order failed to include any factual findings; (3) the evidence was not clear, cogent and convincing and (4) the court erred in permitting foster parents to intervene and in permitting counsel for the foster parents to advise the juvenile officer.

These proceedings commenced upon a petition of the Howard County Juvenile Officer. The petition sought to terminate appellants' parental rights to their daughter, M____ K____ P____, age 5 years. A hearing upon the petition was conducted and the appellants' challenge that the evidence was not clear, cogent and convincing necessitates specific reference to the evidence.

The first witness was Mary Williams, a social service worker for the Lawrence County office of the Missouri Division of Family Services.[1] She first became acquainted with the minor on October 25, 1975 because of alleged abuse against the child. The child was then 13 or 14 months old. Mrs. Williams investigated the abuse and found the child suffering from abrasions, contusions and a human bite mark. Further investigation revealed that the physical abuse had been inflicted by Cary Adams. Immediate removal of the child from custody of her mother did not occur because the mother, Pamela Adams, agreed not to return to Cary Adams' home. At this point in time, Pamela was single and her last name was Phillips. Appellants, as will be shown below, were later married.

At a later time, the date not being specified upon the record, the Lawrence County Juvenile Officer was contacted and was asked to talk with Pamela Adams. Mary Williams and the juvenile officer visited Pamela. At this visit, the natural mother of the minor (Pamela) stated she was planning to again live with Cary Adams and would give up her child. Because of this visit, the Division of Family Services initiated proceedings to remove the child from the home of Pamela Adams. A hearing was held and on October 23, 1975, the minor was made a ward of the court. The minor was placed in the foster home of James and Sandra Smith. The Smiths moved from Lawrence County to Howard County in June, 1978.

During the period from October, 1975 to June, 1978, Mary Williams was the active caseworker involved with the minor. She testified that during this period, she attempted to work with appellants and the foster parents for the express purpose of stabilizing the home situation of appellants so that the minor child could be returned. The efforts toward stabilization included a written agreement executed by Pamela Adams, setting out her responsibility to her child while in foster care. Mrs. Williams testified that Pamela Adams defaulted in regard to the agreement, which called for financial assistance for the child. According to Mrs. Williams, Pamela Adams related special home problems, including repeated abusive treatment of her by Cary Adams, this abuse apparently stemming from Cary's heavy use of alcohol.

During the period that Mrs. Williams was active in the matter, frequent visits occurred between Pamela Adams and the minor child. Mrs. Williams testified that while the relationship between appellants was stabilized by their marriage, the terms of the agreement acknowledging responsibility toward the child were not completely met due to lack of financial support, and Cary's failure to seek alcoholic counseling after requested to do so by Mrs. Williams.

The next witness for respondent was Willella Pine, a social services worker in Platte

---

1. The minor child was with foster parents who originally were residents of Lawrence County. The foster parents and the minor relocated in

Howard County. Supervision was transferred from Lawrence County to Howard County on April 25, 1979 by order of the Circuit Court.

County. Appellants are now residents of Platte County and Ms. Pine came into contact with appellants on or about October 4, 1978. She made contact with appellants under a directive of the circuit court that she conduct a home study. Her recommendations to the court included the commencement of regular visits between appellants and the minor child. She also recommended to the court that parental rights be terminated in September, 1979 if the visits had not materialized. She recommended termination on that date because the minor would start to school at that time.

At the home study, she observed appellants to be friendly, with no apparent attitude problems. Appellants evinced to her their desire to have the minor in their home. The parties agreed that regular visits between appellants and the minor should commence to permit appellants and the minor to become acquainted with one another, and to prevent removing the child abruptly from one home to another.

Since October, 1978, appellants have visited with the minor on two occasions. They have seen her on other occasions at proceedings before the court. The visits were scheduled around Mr. and Mrs. Adams' working hours. In this way, all of the parties (foster parents, minor, caseworker and natural parents) were available on Saturdays. In all, some 16 visits were arranged, and two were kept. Appellants failed without notice to show up for three, and cancelled another 11.

Ms. Pine testified that Pamela Adams discussed with her the voluntary relinquishment of the minor, Cary's alcohol problem and on occasion, Cary's desire not to have the child returned.

The next witness, Margaret Langland, a caseworker, took over the case on transfer from Lawrence County and became involved in June, 1978. She testified she had two meetings with appellants. She was the one who undertook the scheduling of visits, and noted to the court appellants' failure to keep the visits. She said that appellants told her that the combination of car trouble, work and personal problems between themselves (appellants) were reasons given her by the Adamses for not keeping the scheduled visits. She revised the visit schedule to accommodate the Adamses and emphasized her willingness to be available on Saturdays. She also verified that Mr. and Mrs. Adams provided no financial assistance to the minor.

The last witness called by respondent was James Smith, one of the minor's foster parents. He advised the court that the minor had been in his home since 1975. He stated that only two visits between the minor and her natural parents had occurred. He also testified that the minor received no phone calls from the Adamses and other than a Christmas card with a dollar in it, no financial assistance had been received (from the Adamses) either.

In contrast with the foregoing testimony, the evidence was completed with the testimony of appellants. Appellant Pamela Adams stated she was the natural mother of the minor and that Cary Adams was the father. She advised the court that custody of the minor was placed with the Division of Family Services in October, 1975. She stated that for purposes of regaining custody of the minor, she married Cary Adams, she and Cary attended parental education classes, and that they went to the Barry County Mental Health Association. According to Pamela, the purpose in going to the mental health authorities was to determine whether or not Cary was an alcoholic. She testified that she attempted to visit the minor several times, but that financial, employment and auto problems prevented the visits. She stated that the visit was a 300-mile round trip and was beyond their ability to make. She testified that she and her husband both worked (each receiving recent salary increases), had reduced their bills, had adequate living accommodations for the minor and were able and desirous of raising the child. She stated she and her husband had two other children born of their marriage who were living in their home. She admitted to having discussed possible voluntary relinquishment of the minor, but attributed that to the problems and conditions

she and her husband were having at the time. She stated that these problems were all behind them and that she was desirous and willing to have the child. She also testified that she hoped the child could be placed in a foster home close to her and her husband. She filed a motion for the return of the child, but stated that if the court thought it better not to return the child, she would urge the court to place the child closer to her own home so that regular visits could occur. She felt her home environment had been stabilized. She also stated she had asked the foster parents not to be present during the visits because she and her husband had hostilities against the foster parents.

On cross-examination, Pamela admitted that on occasion, her husband had mentioned he felt that the minor was not his daughter, but she thought that this did not present a problem that the two of them could not work out. In September, 1979, she admitted that she had problems with her husband, including finances and her husband's drinking. She admitted that at this time, she discussed giving up the minor.

The evidence showed that since custody was given to the foster parents in 1975, there had been only one birthday gift and one Christmas gift from appellants to the minor.

The last witness was Cary Adams. He stated that he was the father of the minor. He testified that he had a disability from military service which he described as "hyperactivity". He stated that while he received a pension for his disability and was being seen by a V.A. doctor, he was not currently on medication. He was asked whether or not he was an alcoholic and responded, "I have had too much to drink, yes at times."

Cary stated that the minor was born while he was in the service in Germany and that when he returned from the service, he was unsettled, made some mistakes, but was now ready and able to be a father to the minor. He said he had two other children with whom he had a "beautiful relationship". He also stated that he and his wife had accommodations for the minor and that he wanted the minor returned home, or as an alternative, placed in a foster home closer to his home so that regular visits could take place to pave the way for an eventual reunion with the minor. When quizzed about gifts for the minor, he verified the one birthday and one Christmas gift, but disclaimed knowing what to purchase for children in the way of gifts, etc. He testified he and his wife got along, and that lately, they had not had any fights other than ordinary domestic quarrels. He stated that the pressure of the proceedings and involvement of the custody of the minor had produced the problems in the past. When asked if the pressure of the proceedings ever caused him to strike his wife, he stated, "Just in aggravation, I am just so tense at times." He denied that while under pressure, he would just "lash out at someone . . ."

On January 14, 1980, upon completion of the evidence, the court entered its findings and order as follows:

"The Court of its own motion sets aside the findings and order terminating parental rights of Cary J. Adams and Pamela Jean Adams as natural parents of M___ K___ P___ a minor child entered herein on December 17, 1979, and enters amended findings and order as follows: The Court finds M___ K___ P___ was made a ward of the Juvenile Court, her legal custody has been placed with the Division of Family Services since October 25, 1975. That said minor child has been under the jurisdiction of the Juvenile Crt. for more than one year prior to filing of the petition to terminate parental rights and that the natural parents, Cary J. Adams and Pamela Jean Adams have failed on a continuing basis to rectify the conditions which formed the basis of the original petition filed under Section 211.-031, RSMo and Order entered under Section 211.181, and that there is reasonable cause to believe that said natural parents will not, even if given more time rectify those conditions on a continuing basis, and that the juvenile Officer and Division

of Family Services have used reasonable, diligent, and continuing efforts to aid said parents to rectify the conditions and provide on a continuing basis a proper home for said M___ K___ P___. The Court further finds that the termination of parental rights of Cary J. Adams and Pamela Jean Adams is in the best interest of M___ K___ P___. It is therefore ordered that the parental rights of Cary J. Adams and Pamela Jean Adams, natural parents of M___ K___ P___, a minor child, be and the same are hereby terminated.

After a motion for new trial was overruled, this appeal followed.

In their first alleged error, appellants attack the findings and order of the court, arguing that such are not based upon allegations contained in the petition for termination. The petition reads as follows:

### "AMENDED PETITION FOR TERMINATION OF PARENTAL RIGHTS

Now comes the Juvenile Officer of Howard County, Missouri and states to the Court:

1. This petition is filed in the interest of M___ K___ P___, a juvenile born Augustu (sic) 28, 1974 and whose address is Route # 1, Glasgow, Missouri.

2. The name of the juvenile's natural father is Cary Jay Adams whose address is P. O. Box 195, Platte City, Missouri. The Name of the juvenile's natural mother is Pamela Jean Adams, whose address is P. O. Box 195, Platte City, Missouri. The name of the juvenile's legal guardian is the Howard County Division of Fmaily (sic) Services whose address is 100 East Davis, Fayette, Missouri.

3. The juvenile, M___ K___ P___, is now residing in Howard County, Missouri and said juvenile is in the custody of the Howard County Division of Family Services whose address is 100 East Davis, Fayette, Missouri.

4. Said child has been abandoned by Pamela Jean Adams, the natural mother of said child and Cary Jay Adams, the natural father of said child for a period of fourteen months, to-wit: Pamela Jean Adams and Cary Jay Adams have wilfully and continuously neglected to see, visit, or support said child from October 14, 1977 to December 29, 1978. It is further alleged that said parents or other persons legally responsible for the care and support of said child have neglected or refused to provide proper support, education which is required by law, medical, surgical or other care necessary for said child's well-being.

WHEREFORE, petitioner prays that the Court make and enter such judgement (sic) as the Court shall find to be necessary in the interest of the juvenile; and for the termination of parental rights of said natural parents."

Appellants argue that the petition is founded upon § 211.447.2(2)(a) and (b), RSMo 1978 and that the court's finding and order are founded upon § 211.447.2(2) (h); thus, there is a fatal variance between pleading and judgment.

In the first instance, § 211.452, RSMo 1978 prescribes what contents a petition for termination shall contain and in sub-paragraph (4) we find: "The reason or reasons why termination of the parental rights is sought." Appellants argue that the petition is, by its terms, confined to the language of § 211.447.2(2)(a) and (b). A reading of the petition dispels appellants' argument in that the language of the petition also encompasses the language of § 211.031, RSMo 1978. The pertinent language of the petition reads:

" . . . said parents or other persons legally responsible for the care and support of said child have neglected or refused to provide proper support, education which is required by law, medical, surgical or other care necessary for said child's well-being."

Except for application of terms in the past tense and specific reference to the minor child involved herein, the foregoing language mirrors § 211.031.1(1)(a). § 211.447.-2(2)(h) reads as follows:

"(h) The child has come under the jurisdiction of the juvenile court pursuant to the provisions of subdivision (1), paragraph (a), (b) or (c) of section 211.031, and pursuant to an order of the court under section 211.181, and thereafter;"

That the petition contained additional allegations which comport with § 211.447.-2(2)(a) & (b) and that the court elected not to include or encompass those particular statutory reasons within its finding and order, reveals the court did not make disposition of the matter upon those points even though alleged in the petition. This does not lead to the conclusion offered by appellants that there is a fatal variance between the pleading and the finding and order.

■ There is nothing within § 211.452 which mandates the inclusion of specific language found in § 211.447. The petition sounds in part upon language contained within § 211.447.2(2)(a) & (b), but it also contains language contained within § 211.-031.1(1)(a). Appellants argue a distinction without substance. Review of both the petition and the court's finding and order fails to reveal any fatal variance between them. The petition fairly and precisely advised appellants of the allegations presented by respondent, and properly advised them of the allegations against which they should defend. A reading of the petition reveals that it complies with the requirements of the statute by setting forth reasons why termination was sought, see *In Re Burgess*, 359 S.W.2d 484 (Mo.App.1962). Point (1) presented by appellants is found to be without merit and is ruled against them.

■ Appellants' point (2) attacks the trial court for its failure to include factual findings as required by § 211.482, RSMo 1978. § 211.482 reads:

"*211.482. Form of order, effect.*—An order of the court terminating parental rights shall be in writing and shall recite the jurisdictional facts, a factual finding of one or more of the conditions set out in section 211.447, and that the best interest of the child is served by terminating all parental rights of the parent. The order shall be conclusive and binding on all persons and in all proceedings after ninety days from the date of its entry. Said order shall be a final order for purposes of the right of appeal by any interested party thereto."

The court's order expresses jurisdictional facts when one reads the following therefrom:

"The Court finds M___ K___ P___ was made a ward of the Juvenile Court, her legal custody has been placed with the Division of Family Services since October 25, 1975. That said minor child has been under the jurisdiction of the Juvenile Crt. for more than one year prior to filing of the petition to terminate parental rights . . ."

It cannot be concluded, as appellants contend, that the court failed to set forth jurisdictional facts as required by § 211.482.

The order of the court precisely meets the requirement of § 211.482, in that it makes a factual finding of one or more of the reasons set out in § 211.447. The court, in its order, found "that the natural parents, Cary J. Adams and Pamela Jean Adams have failed on a continuing basis to rectify the conditions which formed the basis of the original petition filed under Section 211.031 RSMo and Order entered under Section 211.181 . . ." If the foregoing language is read with the referenced language regarding the jurisdictional fact, three factual findings readily appear in that (1) the minor has been under the jurisdiction of the court for more than one year; (2) legal custody has been placed with the Division and (3) the natural parents have failed to rectify the conditions which formed the basis of the petition filed pursuant to § 211.031 and the order entered under § 211.181.

Appellants cite no authority in support of their argument, however, concerning the jurisdictional fact-finding requirement, see *Matter of Trapp*, 593 S.W.2d 193 (Mo. banc 1980), wherein the State Supreme Court held that a juvenile court's finding that children were neglected within the meaning of the law and were in need of care and protection met the requirement that a juvenile court make findings of fact upon which it exercised its jurisdiction.

The order of the court herein also includes the following language, "The Court further finds that the termination of parental rights of Cary J. Adams and Pamela Jean Adams *is in the best interest of M___ K___ P___.*" This language complies with the third required element of § 211.-482.

This court finds from the reading thereof that the findings and order of the trial court meet the requirements of § 211.482. Upon that basis, appellants' point (2) is found to be without merit and is ruled against them.

Under point (3), appellants argue the evidence was not clear, cogent and convincing to support the court's finding.

It serves no purpose to restate the facts in evidence, but the following facts should be reiterated. This minor child, at the age of some 13–14 months, came within the custody of the Division of Family Services. This custody resulted from evidence of physical abuse caused by appellant Cary Adams. Appellant Pamela Adams elected to return living with Cary Adams rather than to continue to keep the child away from him. After custody was given over to the foster parents, there followed repeated efforts by the authorities to establish a visitation program between the minor and her natural parents. Some 16 visits were scheduled, of which appellants attended 2, failed to show without expressed reason for 3 and outright cancelled 11. Appellant Pamela Adams repeatedly discussed and thought about voluntary relinquishment of the child. Prior to the hearing, appellant Cary Adams denied paternity of the child. Cary Adams claimed he suffered from a "hyperactive" condition, for which he was treated by a physician with the Veterans' Administration. Both appellants claimed the lack of visits were attributed to their financial conditions, and the long distance from their home to the home of the foster parents. Appellants had improved their financial status some three months prior to the hearing, but there was no evidence that even in that period of time, they employed any effort to visit their child.

Even though appellants admitted their desire and capability to have the minor in their home, the evidence upon this record shows a child born August 28, 1974, who has been in the custody and home of foster parents since October 23, 1975. A less than token effort has been made by appellants in contacting this minor concerning her birthdays and Christmas. Appellants have totally failed to provide any financial support toward the needs of the minor. In addition, repeated efforts were made by representatives of the Division of Family Services to establish visitation between appellants and the minor to encourage appellants and the minor to become reacquainted. These efforts were frustrated by appellants' failure to attend those visitations.

■ The evidence is clear, cogent and convincing to support the trial court's finding that termination of appellants' parental rights would serve the best interest of this child. There is nothing upon this record that convinces this court that there existed a valid excuse or reason why appellants failed to attend the visitations. The evidence fails to show any financial support by appellants to meet even the most basic needs of this child. In sum total, the evidence supports a finding that the best interest of this minor would not be served by her removal from her current surroundings and her placement in surroundings which are foreign to her. Repeated urging by the authorities and efforts by the juvenile court have been made to encourage appellants to reestablish their relationship with the minor child, but there has been a virtual lack of effort by appellants to achieve that relationship. Under the evidence herein, appellants' point (3) is found to be without merit and is ruled against them.

■ Point (4) presented by appellants charged the trial court erred in permitting the foster parents to intervene and in permitting counsel for the foster parents to advise the juvenile officer.

Appellants correctly argue that prospective adoptive parents or foster parents are not permitted as parties to proceedings such

as the instant one. Our State Supreme Court has made that quite clear in *Matter of Trapp, supra,* at 205:

"We think that § 452.485, V.A.M.S. Supp. 1979, does not confer a right on foster parents having physical custody of a child to intervene in a custody proceeding based on allegations of neglect or abandonment of the child by the natural parents. The provision is designed to confer certain powers on the circuit court, but it does not confer a right to litigate the issue of neglect on persons who are not interested under the terms of the Juvenile Courts Chapter, Chapter 211, RSMo 1978."

The court outlined the policy reason for such prohibition, stating that "[t]he presence of the foster parents in this action would tend to interject the false issue of the fitness of the foster parents to have custody of the children." *Matter of Trapp, supra,* at 205. That a nonparent has no right of appeal, see *Matter of Baby Girl B,* 545 S.W.2d 696 (Mo.App.1976). In the instant proceedings, the foster parents are not a party to this appeal.

It is obvious from the reading of *Matter of Trapp* that the unwarranted situation to be guarded against is the injection of the false issue of the fitness of the foster parents.

In the instant case, the record shows the entry of appearance of an attorney for the foster parents. This is prohibited under *Trapp, supra,* and the circuit court erred in permitting this attorney to enter this case. The question then becomes one of whether the evidence on the record, coupled with the error by the circuit court, violated the rule in *Trapp, supra.*

The record shows that prior to trial, appellants discussed the matter with the judge and correctly objected to the presence of the attorney for the foster parents. During this discussion, the guardian ad litem explained that the juvenile officer approached him for legal advice and that he in turn advised the juvenile officer to seek independent legal counsel if the Division of Family Services was unable to provide him

with counsel. The guardian then suggested that the juvenile officer talk with the attorney for the foster parents. Aside from the conclusion of the guardian that he understood the juvenile officer went to see counsel for the foster parents, there is no evidence upon this record that such contact was ever accomplished.

Appellants moved the court to dismiss the petition on the basis that the juvenile officer had been counseled by the attorney for the foster parents. This motion was not supported by any evidence and only alleged a conflict of interest to justify the motion.

The only other involvement by the foster parents in the instant proceedings was their testimony concerning the date the minor entered the foster home, the lack of financial support by appellants, lack of phone calls by appellants and the verification of two visits between appellants and the minor. The foster parent was asked "Have you had any problems whatsoever with M___ K___?" This question was objected to and the objection was properly sustained by the court.

The record does not show that counsel for the foster parents was ever involved in the hearing. He asked no questions, did not testify and made no plea to the court.

Appellants argue that under *Trapp,* the entry of appearance of counsel for the foster parents and advice from this attorney to the juvenile officer so tainted these proceedings that reversal is required. The record fails to support appellants' contention except for the entry of the appearance document within the court's record and the overruling of appellants' motion to dismiss because of this allegation. The record does not even establish whether the juvenile officer was counseled by the attorney for the foster parents. If this did occur, such counseling did not result in the injection of the false issue prohibited by *Trapp, supra.* If counsel for the foster parents has transgressed because of a conflict of interest, that question must be addressed in another manner by the Bar Association. This record does not show the foster parents were

involved, other than verification as to lack of visits, support and contact by appellants with the minor.

While appellants consistently argue the rule in *Trapp, supra*, the evidence fails to establish that the rule in *Trapp* was violated. Appellants' argument is found to be without merit and point (4) is ruled against them.

The scope of review in such proceedings is upon both the evidence and the law as in suits of an equitable nature. Due regard for the opportunity of the trial court to judge the credibility of the witnesses is afforded. The decree will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law, see *Matter of Baby Girl B___, supra; Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and Rule 73.01.

The judgment is in all respects affirmed.

All concur.