In the Interest of KEVIN.

No. 13452.

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 25, 1985.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 15, 1985.

Application to Transfer Denied
April 2, 1985.

No appearance for petitioner-respondent.

Jeanene Moenckmeier, Costantinou & Moenckmeier, P.C., St. Louis, for appellant.

TITUS, Judge.

Donna, the natural mother of Kevin, born October 4, 1978, was 17 years old at the time of her son's birth. She now appeals from the May 25, 1983, order of the Juvenile Court of Butler County terminating her parental rights to Kevin. § 211.-482.[1]

Our resolution of this appeal has been made more onerous than necessary by the misaction and nonaction of various interest-ed parties. No party concerned with the affirmance of the court nisi has filed a brief which, had that been done, might have aided our determinations. Many citations and much of the argument contained in the brief filed for Donna deal with adoption cases and problems arising under Ch. 453. This is not an adoption case but one wholly concerned with "Termination of Parental Rights," § 211.442, et seq., which is a separate and complete code within itself. *State ex rel. Brault v. Kyser*, 562 S.W.2d 172, 174 (Mo.App.1978); *In re S____ M____ W____*, 485 S.W.2d 158, 164 (Mo.App.1972). The citations, points and arguments advanced by Donna's counsel germane solely to adoption problems will not be entertained or belabored in our determination of this appeal.

The evidence and testimony in the cause was received piecemeal at four separate hearings held December 11, 1981, October 22, 1982, April 22, 1983, and May 4, 1983. Prompted by the request of Donna's counsel at the last session, the court announced "that all previous testimony that's been taken at various times ... will be a part of the evidence in this case here." Though single when Kevin was born, Donna later married Kevin's father only to divorce him soon thereafter in March 1979. Donna testified at the December 11, 1981, hearing that she was 21 years of age, that the whereabouts of Kevin's father was then unknown to her and that she had been awarded custody of Kevin in the divorce action.

To better understand the bizarre evidence and ofttimes contradictory testimony of Donna, we list additional principal characters involved in the cause:

*Kimberly* (Kim)—An acquaintance and friend of Donna's for perhaps two years before December 14, 1980.

*Maryann*—Met Donna through Kim.

*Phyllis*—Did not meet Donna until December 14, 1980.

---

1. Statutory references are to V.A.M.S.

*The Popes*—Husband and wife residing in Poplar Bluff. They are "cousins" of Phyllis.

Exactly why Donna wanted to be shed of the possession of Kevin (she had considered putting him in a boys' home) is not clear, although she expressed fear for his safety from an unidentified man who allegedly raped her. Donna acknowledged at the first hearing that from the time she divorced Kevin's father in March 1979, until December 14, 1980, she "popped a lot of dope and smoked a lot of pot and all that." She also admitted "shooting" Kevin "with pot" but not on numerous occasions. Subsequent to December 14, 1980 (the date will be shown to be important later), Donna went to Texas January 4, 1981, when she married her current husband, Arvin, June 27, 1981. She has resided in Texas ever since and has given birth to a girl child who was 11 months of age on the date of the third hearing held April 22, 1983. When Donna initially moved to Texas, she confessed she was then "shooting a little dope and smoking a lot of pot" before allegedly discontinuing the practices because "my husband disallows it."

Donna, Kevin, Kim, Maryann and Phyllis resided in St. Louis County on December 14, 1980. Through some unexplained prearrangements among the four females, they met at Kim's home on the last-mentioned date. Phyllis and Donna had not met prior thereto. As admitted by Donna, the meeting was held to arrange for Phyllis to receive from Donna possession of Kevin (then two years and two months of age), so that he could be delivered into the possession of the Popes (whom Donna had not then seen or known) to be taken to Poplar Bluff for residence. Kim, Maryann and Phyllis testified that after discussing the matter with Donna for some two hours to insure Donna understood the situation, Donna signed Juvenile Officer's Exhibit A as follows:

"I, Donna . . ., give temporary custody of my son Kevin . . . to [the Popes]. This temporary custody is to remain in effect until such time as adoption papers can be completed giving [the Popes] full and permanent custody."

As admitted by Donna at the first hearing, she signed, read and understood the exhibit as giving the Popes "full custody" of Kevin "until such time as there could be an adoption." The exhibit dated "12/14/80" by Donna was penned by Phyllis and witnessed by Phyllis and Maryann. Without objection on Donna's behalf, Kim, Maryann and Phyllis each testified Donna fully understood the meaning of the exhibit when she signed it.

Commencing with the second hearing held October 22, 1982, Donna began to waver from the sworn testimony given at the first session. By the time the last hearing was conducted May 4, 1983, Donna had completely reversed her previous recountings even to the extent of claiming that she had not signed Exhibit A, which she previously testified she had done. Her latest testimony was that the consent she had signed to give the Popes custody of Kevin was only "a medical consent" so that the Popes could provide Kevin with medical care in the event he "got hurt." In other words, it seems evident that Donna was clearly mistaken or lying when she testified at one time or another. However, her previous testimony that she delivered Kevin to Phyllis for redelivery to the Popes for final adoption purposes and her subsequent recounting the delivery was only temporary until such time as she could acquire permanent residency, is only one inconsistency in her testimony. Albeit Donna contacted Phyllis shortly after December 14, 1980, to learn if the Popes would give her money so she could go to Florida, she went to Texas. Also, even though she claimed at the last hearing that Kevin's custody by the Popes was temporary, Donna admitted she had never contributed anything for Kevin's support since she "voluntarily gave up custody of that boy."

In our review of this court-tried proceeding we are to affirm the judgment

below unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law. Conflicts in evidence are for resolution by the trial court, which has leave to believe all, part or none of the testimony of any witness. *In Interest of D.A.F.*, 637 S.W.2d 780, 782[1] (Mo.App.1982); *Matter of Adoption of Shelly* ____, 625 S.W.2d 183, 184[1, 2] (Mo.App.1981); *In Interest of M____ K____ P____*, 616 S.W.2d 72, 80 (Mo. App.1981).

The final order of the court, in part, reads: "3. That the parent, Donna ... has consented in writing to the termination of her parental rights. 4. That it appears by clear, cogent and convincing evidence that the parent, Donna ... who is both legally required and financially able, has failed to support the child for a period of six months. WHEREFORE, the Court finds that the best interest of the child is served by terminating all parental rights of the parent, Donna.... Therefore, it is ordered, adjudged and decreed that the parental rights of Donna ... are hereby terminated as to the minor child Kevin...."

Under the law, § 211.447–2(2)(a)b., "2. The juvenile court may ... terminate the rights of parent to a child if it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist: ... (2) When it appears by clear, cogent and convincing evidence that one or more of the following conditions exist: (a) The parent has abandoned the child. The court may find that the parent has abandoned the child if, for a period of six months or longer for a child over one year old ..., either of the following has occurred: ... b. The parent has, without good cause, left the child without any provision for support and without any communication or visitation from the parent. Evidence that the parent has acted to support, to communicate with or to visit the child during the period may be disregarded if such acts of the parent appear to have been merely a token effort."

■ If any single finding of the juvenile court in its order, supra, proves unshakable and firm as against Donna's attacks, it will be unnecessary for us to pass upon the correctness vel non of the others as the existence of but one of the statutory grounds for termination of parental rights is sufficient provided termination is in the best interest of the child. *In Interest of H.J.P.*, 669 S.W.2d 264, 273[13] (Mo.App. 1984); *Juv. Office of Cape Girardeau County v. M.E.J.*, 666 S.W.2d 957, 960[5] (Mo.App.1984).

■ In our opinion the evidence was sufficient to support the court's obvious conclusion and finding under § 211.447–2(2)(a)b. The evidence demonstrated that Donna voluntarily abandoned Kevin to the Popes for six months or longer and, sans good cause, thereafter left Kevin with the Popes without making any provisions for his support and without actually undertaking any communication or visitation with the child. Phyllis repeatedly testified that when Donna signed Exhibit A, supra, and discussed the matter with her, Kim and Maryann, Donna understood that she was permanently giving up custody of Kevin. Donna's testimony that after her December 14, 1980, meeting with the other three women she was "threatened" by Kim and Phyllis if she undertook to see or regain custody of Kevin was vehemently denied by the supposed threateners. Donna admitted she last saw Kevin December 14, 1980, and had never made any provision for his support nor had she physically undertaken to communicate or visit with the boy. Perhaps this was for the best as some exhibits in the cause were letters from Donna to female Missouri friends written after Donna had married Arvin. One letter recounts that "we always got a joint in our hand smoking it" and the epistles are generously laced with such expressions as "fuck", "shit", "pissed" and "fucked up". One letter was accompanied by Donna's drawing depicting the erect genitals of a male and the breasts of a woman, labeled "fried eggs".

Donna married Arvin six months after giving Kevin to the Popes. Subsequent thereto she appeared to be sufficiently affluent from some unspecified source or sources to hire two sets of St. Louis lawyers and not only pay their fees but their expenses from that city to attend to filings and hearings in Poplar Bluff. This would also apply to Donna's personal expenses incurred in traveling from Texas to attend client-lawyer sessions and the Missouri trials. Yet with such apparent opulence, there was no testimony, save for a very few isolated instances, that Donna undertook to support, communicate with or visit Kevin subsequent to December 14, 1980. We disagree with Donna's claim that the court nisi did not find pursuant to § 211.-447–2(2)(a)b. but rather under § 211.447–2(2)(b). The latter separate reason for termination is predicated upon a parent's neglect of a child under a court approved plan to correct specified neglect conduct of the parent. None of the elements contained in the separate condition specified in § 211.-447–2(2)(b) were alleged, proved or found. Neither was proof thereof necessary where there existed no allegation of neglect as defined in the statute and the actual cause pleaded and proved was predicated on § 211.447–2(2)(a)b.

One of Donna's points relied on asserts the trial court erred in finding that Exhibit A, supra, satisfied the conditions of § 211.-447–2(1), i.e., that Donna consented in writing to the termination of her parental rights, because said exhibit was not acknowledged or properly witnessed as required by § 211.447–3. Even if this claim is ceded correct, as previously seen the correctness vel non of the particular finding is of no moment if, as we have determined, any other legal finding for termination of parental rights is found to exist.

■ The final point we consider is Donna's contention the trial court committed *plain error* in permitting counsel for the Popes to appear and participate in the hearings nisi without first having formally

received court authority and permission to do so. Albeit upon proper and timely objections it may have been improper for such counsel to participate in the hearings, the error, if any, is of no concern to us now as Donna's counsel at no time during trial or in the motion for new trial etc., made objection to counsel's appearance and participation. *In re Marriage of Ryterski,* 655 S.W.2d 102, 103[1] (Mo.App.1983). Likewise, we decline to undertake plain error review as now requested. Such review should be resorted to only in exceptional cases where the appellate court deems that manifest injustice has occurred. *Cowden v. Sun Oil Company of Pennsylvania,* 583 S.W.2d 547, 549–550[6] (Mo.App.1979). The plain error rule may not be invoked to excuse mere failure to timely and properly object. *In Interest of H.J.P.,* supra, 669 S.W.2d at 271[5].

Judgment affirmed.

PREWITT, C.J., and HOGAN, J., concur.

MAUS, J., concurs in result only.

CROW, P.J., recused.

