**In the Interest of J.C.G., B.J.G. and
A.D.G. (Juveniles).**

**JUVENILE OFFICER OF HOWARD
COUNTY, Respondent,**

v.

**B.J.G., Natural Father, Appellant.**

**No. WD 38893.**

Missouri Court of Appeals,
Western District.

Nov. 10, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 1987.

Application to Transfer Denied
Feb. 17, 1988.

William J. Daily, Glasgow, for appellant.

Kenneth D. Kyser, Moberly, for respondent.

Before NUGENT, P.J., and SHANGLER and BERREY, JJ.

**BERREY, Judge.**

Father appeals from the order of the juvenile court of Howard County terminating his parental rights to his three children, A.D.G., female born 2–5–74, B.J.G., male born 11–1–75, and J.C.G., female born 6–6–80. The chief juvenile officer filed three petitions on February 26, 1986, for the termination of parental rights as to both parents, L.C.N., the mother (hereinafter mother) and B.J.G., the appellant-father (hereinafter father) concerning these juveniles. Prior to the termination hearing on September 4, 1986, the mother acquiesced in the termination of her parental rights and the hearing proceeded as to the father only. The decision of the juvenile court terminating the father's rights is affirmed.

Mother and father were married on March 24, 1973. Mother had two daughters from a previous marriage, T.L., born 11–14–66, and M.L., born 6–5–69, who lived with them and the three juveniles at issue born to the marriage. The family lived together until November, 1981, when father was sentenced to ten (10) years imprisonment on an arson conviction; father testified he expected to be paroled in August, 1987.[1] On August 20, 1984, mother and father were divorced and mother had custody of the juveniles. By order of the juvenile court on August 24, 1984, the juveniles were taken into temporary custody and detention by the Division of Family Services (D.F.S.) of Howard County on the basis the children had been "subjected to a combination of physical and emotional abuse and neglect by [their] caretaker." On January 30, 1985, the children were made wards of the court and were to remain in temporary custody of D.F.S. under foster care. The juvenile court, by an order October 1, 1985, found a male acquaintance of the mother sexually abused the children and the mother had knowledge of the fact and that she herself had sexually abused the male child. The court ordered D.F.S. to maintain the present foster care and arrange reasonable visitation with the natural father at his place of incarceration; the mother was to continue her present schedule of visitation.

---

1. His escape from prison in 1984, extended his earlier expected release.

On February 26, 1986, petitions for termination of parental rights were filed alleging that father had perpetrated severe acts of sexual and physical abuse upon the male child, B.J.G., as well as the juveniles' half-sisters, T.L. and M.L. and that it would be in the best interest of his children if the parental rights were severed. A hearing was held to determine the truth of these allegations and whether it was in the best interest of the juveniles to terminate the father's parental rights. Evidence adduced at the hearing concerning those allegations will be discussed in addressing father's Point IV on appeal.

■ Father, in his first point on appeal, contends the trial court did not have jurisdiction over the matter of termination. He alleges that before the juvenile court can proceed on the petitions and adjudication of the termination of his parental rights, there must be a prior hearing as to whether he had in fact abused or neglected his children; he suggests § 211.447.2(2) RSMo 1986, mandates two separate proceedings before termination relying on *C.L.P. v. Pate*, 673 S.W.2d 18, 20 (Mo. banc 1984), and this court's decision in *In the Interest of D.L.D.*, 701 S.W.2d 152 (Mo.App.1985). In these cases, the courts dealt with the predeccessor statutory subsections, § 211.447.2(2)(i)b, RSMo Supp.1984, which sets forth the conditions for termination on the basis of *neglect*. In *C.L.P. v. Pate, supra*, 673 S.W.2d at 20, the court stated the statute contemplates two separate proceedings: (1) a neglect proceeding which determines whether a temporary shift in custody is needed; and (2) a termination proceeding to determine whether the parent has rectified the conditions which were the basis for the temporary shift, (1) above, and if the conditions were not rectified, the issue of a complete and permanent rupture of the family relationship comes into focus. *Accord. In the Interest of D.L.D.*, 701 S.W.2d 152, 158–160 (Mo.App.1985). The *Pate* court found those procedures were constitutional although they were attacked on the ground the statutory language was vague and overbroad. *C.L.P. v. Pate, supra*, 673 S.W.2d at 21.

In the case at bar, the petitions were based upon § 211.447.2(2)(c) RSMo 1986, which deals with termination based upon "a severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent...." Evidence of such licentious conduct is not a condition that can be rectified like the condition of neglect; the rationale of affording a parent another chance to act responsibly is not present. In the case at bar, the father was given a proper hearing on the matter and the court found by clear, cogent and convincing evidence that, as to B.J.G., the father had "inflicted or caused to be inflicted ... severe acts of physical and sexual abuse;" and that as to A.D.G., B.J.G., and J.C.G., the father had "perpetrated severe acts of physical and sexual abuse" upon their siblings. Point I is denied.

■ In father's second point on appeal, he attacks the lower court's findings on the basis that § 211.447.2(2), requires that the grounds for termination of parental rights must exist at the time the petition is filed and that the evidence of his alleged sexual abuse which occurred five (5) years before could not be the basis for termination. A similar attack was made in *D.G.N. v. S.M.*, 691 S.W.2d 909 (Mo. banc 1985). The appellant-mother there argued that the state may only terminate parental rights on the basis of conditions that exist at the time of the hearing. In *D.G.N.*, the evidence revealed that in July of 1981, the appellant-mother had inflicted serious injury and abuse to two of her children. She pleaded guilty to criminal charges in December, 1981, and was sentenced to five years imprisonment. While incarcerated, she gave birth to a son, *D.G.N.* on January 22, 1982, and the child was placed in custody of the D.F.S. In June 1982, the juvenile officer filed a petition to terminate the mother's parental rights and the court found the prior abuse of D.G.N.'s older siblings was sufficient to justify the termination of parental rights of a younger sibling who was not in esse at the time of the abuse. As to the question of whether past conduct was indicative of current conditions, the court stated:

It should also be noted that all grounds for termination must to some extent look to past conduct. Otherwise, a parent who has seriously abused or neglected a child at the time the petition is filed can always argue that since the filing of the petition he or she has reformed, such reformation usually purported to have occurred while the child is away from the parent.

*Id.*, at 912. The court in *D.G.N.*, *supra*, did acknowledge that the trial court may find circumstances where the length of time between the conduct and the petition may be so great that the evidentiary value is lessened concerning the existing home environment. *Id.* This concern becomes less important where, as in this case, the sexual abuse by the father stopped when he was incarcerated and since then he has had no opportunity to be alone with the children. This court believes to require his children to be subjected to the potential of further sexual abuse "would be a tragic misapplication of the law." *In Interest of J.A.J.*, 652 S.W.2d 745, 749 (Mo.App.1983). Appellant's Point II is denied.

■ In Point III and IV of his brief, father asserts that the trial court erred in stating the juveniles have been "abused and neglected," in that there were no allegations of neglect in the petition and there was no evidence presented at the hearing on the issue of neglect. The petitions terminating the parental rights as to A.D.G. and J.C.G., specifically alleged "that the natural father perpetrated several acts of sexual abuse and physical abuse upon said child's older siblings, [T.L.] and [M.L.], and B.J.G." The B.J.G. petition further elaborated that the "parents forced other sexual abuse acts to occur between said child and older siblings." The petitions fairly and precisely advises the father of the allegations of physical and sexual abuse of which he should defend. *In Interest M—K—P—*, 616 S.W.2d 72, 77 (Mo.App.1981). The order terminating parental rights merely tracks the statutory subsection 211.447.-2(2)(c)[2] for termination on the grounds of physical and sexual abuse. Nothing in the petitions, in the evidence presented, or in the order for termination suggests father was accused or terminated on the basis of neglect. If there exists one of the statutory grounds for termination of parental rights, this is sufficient for termination provided it is in the best interests of the child. *In Interest of Kevin*, 685 S.W.2d 938, 941 (Mo.App.1985). On review, the trial court's judgment will be sustained "unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law." *In interest of M—K—P—*, *supra*, 616 S.W.2d at 80 (Mo.App.1981). It is for the trial judge, not this court, to judge the credibility of the witnesses. *Id.* The evidence at the hearing concerning the allegations of abuse is as follows:

Mother testified against the father and stated that father had an alcohol problem and would beat her in front of the children. Mother testified father would hold her and her daughters, T.L. and M.L., down and "put B.J.G.'s penis in [their] mouth[s]." If they did not comply with father's wishes, "he would mash [their] finger[s] until [they] almost broke." Mother stated that this would occur in front of the other siblings, A.D.G. and J.C.G.

T.L., father's step-daughter, also testified at the hearing. She stated that from

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exists:

....

(2). The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

....

(C). A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family.

1978 to 1981, father would make her half-brother, B.J.G., place his penis into her mouth or make B.J.G. "suck on her breasts." T.L. also testified Father would make her "suck around on his penis," on different occasions from the time she was ten (10) until she was fourteen (14). The other siblings were sometimes present when this activity occurred. She further stated father touched her breasts; poured alcohol onto her and her sister's vaginal areas; beat her with an extension cord; threaten to kill her; shot at her with a pistol; and tried to run her over with a car. T.L.'s testimony was supplemented by voluntary statements made by her on September 25, 1981, and November 2, 1981. These exhibits set forth essentially the same facts adduced at trial and described an incident in which father made her and her friend kiss each other's breasts in his presence.

The state also presented testimony from the juveniles' counselors. Stephen Petrechko, therapist for B.J.G., testified B.J.G. was under a lot of emotional stress and had an inordinate number of facial tics and tended to shake. Initially, the male child was withdrawn but has progressed although he is still unable to talk freely about the sexual abuse. Petrechko stated B.J.G. can discuss the abuse by mother's acquaintance but cannot remember anything for the age of five and six; he denies there has been sexual abuse in the past, more so than necessary if it was not true, according to Petrechko. He believes B.J.G. represses a lot.

Charles Neville, a social worker, and Bonnie Riley, a counselor who works with victims of sexual abuse, testified concerning the emotional health of A.D.G., (born 2–5–74). Both experts agreed A.D.G. blocks unpleasant experiences out of her mind and represses the sexual abuse by her father. Neville stated A.D.G. would become very agitated when she explored the possibility of sexual abuse by her natural father.

In this court's opinion, this evidence was sufficient to support the court's finding under § 211.447.2(2)(c), that the father had "perpetrated severe acts of physical and sexual abuse." The father suggests in his Point V that the evidence, however, does not support the findings and conclusions by the trial court that "there exists minimal emotional ties between the [children] and the natural father"; that the conduct of the natural father has subjected the [children] "to substantial risk of physical and mental harm;" and that it is in the best interests of the children if the father's rights were terminated. He argues the evidence shows he wrote frequently to the children and sent money for their transportation to the penitentiary for visitation. He also states the youngest female, J.C.G., has written letters to him stating she loves and misses him.

As noted in *In Interest of P.E.B.*, 708 S.W.2d 315, 319–320 (Mo.App.1986), wherein, an appellant-mother, found to have abused her children, argued she loved her children, visited them and sent money for their support, the court found those factors alone were not determinative of the best interests of the children. It held the evidence must be considered as part of all the evidence. *Id.* The "best interests of the children" is a determination made by the trial judge under imprecise and subjective standards. *Id.; K.S. v. M.N.W.*, 713 S.W.2d 858, 865 (Mo.App.1986). In this case, the evidence revealed father had committed indecent and lecherous conduct toward the children in the home when they lived as a family unit. These current acts of responsibility toward his children do not outweigh the severe impact of this previous conduct upon his children and the potential for future harm and abuse. We find the trial court was amply justified in holding it is in the best interests of the children to terminate the father's parental rights.

Judgment affirmed.

All concur.