In the Interest of L——— E——— E———, G——— J——— J——— and G——— A——— G——— J———, Jr.

**Russell L. SHELDEN, Juvenile Officer, Judicial Circuit 25, Respondent,**

v.

**H——— E———, Appellant.**

No. 17819.

Missouri Court of Appeals, Southern District, Division One.

Sept. 24, 1992.

_____

John Alpers, Jr., Cabool, for appellant.

Sidney T. Pearson III, St. James, for respondent.

CROW, Presiding Judge.

Appellant, H——— E———, brings this appeal from a judgment terminating her parental rights to two of her six children. We affirm.

Appellant, born February 7, 1953, married for the first time "about 1971." This

union endured some four months, producing no children. Appellant "had the marriage annulled" in February, 1972.

Appellant then married G___ A___ G___ J___ ("Art") in November, 1972. This marriage produced three children: C___ D___ M___ J___ ("the eldest girl"), born October 27, 1973; S___ J___ J___ ("the middle girl"), born September 4, 1975; and G___ J___ J___ ("the youngest girl"), born November 20, 1978. The marriage was dissolved in 1979.

Sometime thereafter, Appellant and Art resumed cohabitation. A son, G___ A___ G___ J___, Jr. ("the eldest boy") was born to Appellant December 22, 1983. Asked whether Art is the eldest boy's father, Appellant replied, "That is questionable." She explained:

> ... Art and I ... had been living together ... and Art had taken off again, and ... I went out one night and ... Either I got pregnant that night or I got pregnant by Art right afterwards, I'm not sure which one.

According to Appellant, the other possible father of the eldest boy is Manuel H___, Jr. ("Manuel").

Appellant married G___ B___ E___, Jr. ("Junior") in May, 1986. Junior was then 18. A son, L___ E___ E___ ("the middle boy") was born April 14, 1987.

The series of events that culminated in the judgment appealed from began May 19, 1987, when a deputy juvenile officer filed a petition asking the Juvenile Division of the Circuit Court of Texas County ("the juvenile court") to take jurisdiction of the three girls and the eldest boy per § 211.031.1, RSMo 1986. The juvenile court immediately entered an order placing the four children in the custody of the Texas County office of the Division of Family Services ("DFS") pending further orders.

Although the record contains scant evidence regarding the circumstances surrounding this incident, Appellant supplied the following information in her testimony.

She arrived home from work and learned her husband, Junior, had been arguing with the eldest girl and the middle girl. With Appellant's permission, those two girls and the eldest boy went for a walk. When they failed to return at suppertime, Appellant began searching for them. Her quest was unsuccessful, so she called the police. An officer told her someone "would be down in a few minutes." Appellant continued:

> ... they showed up. When they came down there they took [the youngest girl]. And they said the [eldest girl, middle girl and eldest boy were] at the police station and ... that they were taking the children because the children were abused.

Appellant contacted the deputy juvenile officer and was told the children would not be sent back home. Thus, after May 19, 1987, only the middle boy (age five weeks) remained in the home.[1]

The next relevant event occurred May 27, 1987, when Appellant returned home from work. She testified:

> As I come down the hill, Junior was standing out in the road yelling and hollering and carrying on, and he had the baby ... and I said, "What's wrong with you?" And he said, "The baby is hurt. He fell off of the bed." ... And I said, "Oh, Junior, what did you let him do that for?" I said, "Now, we're going to really be in trouble."

Appellant and Junior took the middle boy to a local physician, who discovered the infant had fractured ribs. Additionally, according to the physician, "There was a severe diaper rash ... which was bleeding and the scrotum was also swollen from this rash." At the direction of the physician, the middle boy was taken by ambulance to a Rolla hospital.

The physician who treated the middle boy there testified he had five fractured ribs—injuries inconsistent with falling from a bed. During the middle boy's hospitalization (some four weeks), Junior told the physician how the injuries occurred. The physician testified:

> This particular day [Junior] could not quiet the baby. He became very frus-

---

1. The youngest boy had not yet been born.

trated and, in the end, his anger, he struck the baby against his knee.

Q. Basically slammed the baby down on the knee?

A. Yes.

Q. Would that history be consistent with the injuries that [you] observed?

A. Much more so, yes.

. . . .

Q. Would you describe for me the rash in the groin area?

A. Rash in the groin covered the scrotum, the penis, and buttock area. It was excoriated to the point that if you wiped him when he soiled himself, that the skin did bleed in those areas.

Q. Would you describe it as very severe?

A. Yes.

The day after the middle boy was injured, a deputy juvenile officer filed a petition asking the Juvenile Division of the Circuit Court of Phelps County to take jurisdiction of him per § 211.031.1, RSMO 1986. The juvenile court immediately entered an order placing the middle boy in the custody of the Phelps County office of DFS pending further orders.

A few days later, according to Appellant, "the police and the welfare showed up" at her home, questioned her and Junior, and took Junior to jail. He was charged with "child abuse" and remained in jail "at least a month."

On June 17, 1987, the Phelps County juvenile court entered an order transferring the middle boy's case to the Texas County juvenile court, where the case involving the other four children was lodged.

On October 22, 1987, the Texas County juvenile court held a hearing regarding the four eldest children and ordered that they remain under the jurisdiction of the court in DFS custody. At the request of Appellant and Junior, the middle boy's case was continued pending completion of the criminal case against Junior.

On November 7, 1988, the juvenile court conducted a dispositional review hearing regarding the four eldest children.[2] The court intended to simultaneously hear the middle boy's case; however, Junior appeared without counsel. The court continued the middle boy's case to November 28, 1988.

Junior failed to appear for the hearing November 28, 1988. Appellant appeared in person and with counsel, and further evidence was heard.

On December 12, 1988, the juvenile court ordered that all five children remain under the court's jurisdiction in custody of DFS.

Seven weeks later, on January 31, 1989, J___ A___ E___ ("the youngest boy") was born to Appellant and Junior. Their marriage was dissolved October 4, 1989.

On April 10, 1990, a deputy juvenile officer filed (1) a petition to terminate the parental rights of Appellant and Manuel to the eldest boy, and (2) a petition to terminate the parental rights of Appellant and Junior to the middle boy.

Evidence was heard November 19, 1990.[3] Appellant appeared in person and with counsel. Neither Manuel nor Junior appeared. The juvenile court stated Manuel had been served by publication, and Junior had been served by registered mail.

All the evidence could not be presented November 19, 1990, so the cause was adjourned to April 15, 1991. The evidence was completed that date. The evidence revealed, among other things, that the eldest girl had married "in October or November," 1990. The middle girl was residing in

---

2. During the hearing, Appellant's lawyer stated, "[W]e have no objection to the Court maintaining jurisdiction." Counsel added there were possible alternative placements for the children, i.e., with relatives.

3. The juvenile court simultaneously (a) heard evidence on a petition to terminate the parental rights of Art—but not Appellant—to the youngest girl, and (b) conducted a dispositional review hearing regarding the youngest girl. Art failed to appear. In a judgment entered June 21, 1991 (of which more above), the juvenile court (a) terminated Art's parental rights and (b) ordered that the youngest girl remain in legal custody of DFS, but be placed in the physical custody of Appellant until further order. No issue is raised in this appeal as to the rulings regarding the youngest girl.

an Oklahoma community where her paternal grandmother lives. The youngest girl was still in DFS custody in a "behavioral foster home." The eldest boy and the middle boy were likewise in DFS custody, and were together in a foster home (a different one than the youngest girl).

According to Appellant, the youngest boy—over whom the juvenile court had never taken jurisdiction—was in her custody, and is usually cared for by her sister and the latter's husband while Appellant is at work.

On June 21, 1991, the juvenile court entered judgment (1) terminating the parental rights of Appellant and Manuel—and Art "if any"—to the eldest boy, and (2) terminating the parental rights of Appellant and Junior to the middle boy.

This appeal followed. Appellant presents two points. We consider point II first. It avers the juvenile court erred "in failing to hold dispositional hearings as required by [§ 210.720, RSMo Cum.Supp.1991] to allow [Appellant] to present evidence that children should be returned to her home."

Section 210.720, relied on by Appellant, reads, in pertinent part:

1. ... the court ... shall hold a dispositional hearing within eighteen months of initial placement and annually thereafter. The dispositional hearing shall be for the purpose of determining in accordance with the best interests of the child whether or not the child should be continued in foster care or whether the child should be returned to a parent, guardian or relative, or whether or not proceedings should be instituted to terminate parental rights and legally free such child for adoption.

Here, the initial placement of the eldest boy with DFS was May 19, 1987; the initial placement of the middle boy with DFS was May 28, 1987. The juvenile court held a hearing October 22, 1987, regarding the eldest boy (and the three girls), and ordered that they remain under the jurisdiction of the court in DFS custody. At Appellant's request (and Junior's), the court continued the middle boy's case pending completion of the criminal case against Junior. Thus, the lack of a hearing regarding the middle boy on October 22, 1987, was at Appellant's instance.

The juvenile court held another hearing November 7, 1988, again intending to consider all five children. Because Junior appeared without counsel, the court continued the middle boy's case to November 28, 1988, and heard it that date.

At these 1988 hearings, the court received evidence regarding all the children, their circumstances and placements, service agreements between DFS and Appellant, the eldest boy's and the middle boy's attitudes toward Appellant, and DFS's evaluation and recommendations. The court also heard from various relatives of Appellant, who expressed willingness to be custodians of various children, and from a DFS official to whom Junior admitted slamming the middle boy down against Junior's upraised knee (the trauma that caused the broken ribs).

As noted earlier, two weeks after the November 28, 1988, hearing, the juvenile court ordered that all five children remain under the court's jurisdiction in custody of DFS. It thus appears the court did in this instance address and determine the matters specified in § 210.720.1.

One of Appellant's complaints, as we grasp it, is that after the 1988 hearings, the juvenile court ordered home studies of the relatives who had volunteered as custodians for the children, but failed to enforce the order.

It is apparently true that home studies were not done on all the relatives. However, the testimony shows the eldest girl was placed in the home of one of Appellant's brothers sometime after the 1988 hearings and remained there a year. The middle girl was placed in the same home and stayed two months. The youngest girl was placed in the home of another brother of Appellant and remained there some six months. Hence, the juvenile court and DFS did not ignore Appellant's wish that placement of some of the children be tried with relatives.

Appellant also complains that no dispositional hearing was held after 1988. She correctly points out some 17 months elapsed without a hearing. Then, on April 10, 1990, petitions were filed to terminate parental rights to the eldest and middle boys. The only hearings thereafter regarding those two children (November 19, 1990, and April 15, 1991) concerned the issue of termination.

■ Obviously, a dispositional hearing regarding the eldest and middle boys was several months overdue at the time the termination petitions were filed. Respondent concedes this. However, Respondent points out Appellant cites no authority for the proposition that failure to hold a timely dispositional hearing invalidates a subsequent judgment terminating parental rights.

In *D.D.C. by Juvenile Officer v. B.C.*, 817 S.W.2d 940 (Mo.App.1991), a parent whose parental rights were terminated appealed, contending the juvenile court erred in that it failed to hold a dispositional hearing as mandated by § 210.720. The Western District of this Court held the issue was unpreserved, and thus reviewable only for plain error. Finding the evidence clear and convincing in support of termination, the Western District found no manifest injustice or miscarriage of justice. *Id.* at 944.

Here the issue was, at least arguably, preserved in the trial court. Consequently, we shall consider it on the merits.

■ Termination of parental rights is authorized by § 211.447, RSMo Cum.Supp. 1990. The juvenile court may terminate parental rights if it finds termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more statutory grounds for termination exist. § 211.447.2. If there exists one statutory ground for termination, that is sufficient provided termination is in the best interests of the child. *In Interest of S___ A___ J___*, 818 S.W.2d 690, 703[8] (Mo.App.1991); *In Interest of J.C.G.*, 743 S.W.2d 449, 452[3] (Mo.App.1987); *In Interest of Kevin*, 685 S.W.2d 938, 941[3] (Mo.App.1985); *In Interest of H.J.P.*, 669 S.W.2d 264, 273[13] (Mo.App.1984).

We fail to see how the lack of a dispositional hearing within the time required by § 210.720.1 is relevant to the issues spelled out in the preceding paragraph. Appellant fails to explain the connection, and cites no case that does so.

As suggested in *D.D.C.*, termination hinges on whether at least one statutory ground is supported by evidence of the requisite strength, not on whether there was a timely dispositional hearing.

We hold the lack of a dispositional hearing after 1988 supplies no basis for reversal. Point II is denied.

Point I reads:

The trial court abused its discretion and therefore erred in terminating [Appellant's] parental rights to [the eldest boy and the middle boy] because said judgment is not supported by clear cogent and convincing evidence as required by law.

Rule 84.04(d)[4] reads, in pertinent part:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous

. . . .

The purpose of the rule and the necessity of obeying it are extensively discussed in the oft-cited case of *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

■ Appellant's point I supplies no hint as to wherein and why the juvenile court's judgment is unsupported by clear, cogent and convincing evidence. Consequently, the point presents nothing for review. *Phillips v. Phillips*, 819 S.W.2d 413, 416[2] (Mo.App.1991); *Best v. Culhane*, 677 S.W.2d 390, 394[4] (Mo.App.1984); *Tripp v. Harryman*, 613 S.W.2d 943, 950[12] (Mo.App.1981).

However, because the best interests of two children are at stake, we have, ex

---

**4.** Rule references are to Missouri Rules of Civil Procedure (1992).

gratia, scrutinized the record to determine whether the juvenile court committed plain error in terminating Appellant's parental rights.

The juvenile court specifically found the eldest boy and the middle boy had no emotional ties to their parents and it was in the best interests of each boy that parental rights be terminated.

We have seined the argument portion of Appellant's brief and have found no contention that such findings are erroneous. Indeed, there was evidence that both boys are estranged from Appellant, have bonded to each other, and are thriving in the home of the foster parents, who are interested in adopting them. The eldest boy has been with these foster parents since May 28, 1988. The middle boy was placed with them May 1, 1989.

The juvenile court found several statutory grounds existed for termination. One of them was § 211.447.2(3), RSMo Cum.Supp. 1990. That statute reads:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home....

The serious injuries inflicted on the middle boy May 27, 1987, by Junior are reported earlier in this opinion. Additionally, Appellant concedes there was evidence Junior may have abused the eldest girl and the middle girl before their removal from the home in May, 1987.

Appellant's testimony of April 15, 1991, included this:

Q. ... Where is [Junior] at the present time ...?

A. The last I heard he was in Fordland.

Q. Okay. Is he incarcerated?

A. Yes.

Q. And was he incarcerated after the dissolution of your marriage?

A. Yes.

Q. Do you know what he was incarcerated for?

A. I think it was for stealing.... He was supposed to have stolen some money and he broke his probation. He was put on probation and he broke his probation.

Later in the April 15, 1991, hearing, a Shawnee, Oklahoma, police officer testified he saw Appellant and Junior together on December 12, 1990, leaving a residence Appellant was renting in Shawnee. They drove to a store, and then to the residence of a relative of Junior.

The officer next saw Appellant on January 2, 1991, at the police station. Appellant came in with the middle girl (then age 15) and reported Junior had "sexually assaulted" the girl at Appellant's residence, where Junior had spent the previous night. Although the details are sketchy, we glean from the transcript that while the middle girl was taking a bath, Junior entered the bathroom and an argument ensued. Junior pushed the girl's head underwater. She escaped from the tub and fled to the kitchen. Junior pursued, knocked her down and, with his penis protruding from his pants, attempted to have intercourse. Inferably, the act was not consummated.

From this evidence the juvenile court could have reasonably believed, as it presumably did, that although Appellant is no longer wed to Junior, a relationship persists between them whereby he enjoys unrestricted license to her home.

Additionally, Appellant's testimony is susceptible to the inference that she had not seen Junior since November or December, 1990. This was flatly refuted by the police officer's testimony about the incident January 2, 1991.

The conditions that led to the assumption of jurisdiction over the five eldest children were abusive acts and physical injuries at the hands of Junior in May, 1987. Such conditions continued to exist in January,

1991, as demonstrated by Junior's attack on the middle girl in Appellant's home. According to the officer, Junior "had been staying there off and on."

We hold there was clear, cogent and convincing evidence that the conditions which led to the assumption of jurisdiction still persisted some three and a half years later. Therefore, at least one statutory ground for termination, § 211.447.2(3), had the required evidentiary support. That being so, termination of Appellant's parental rights to the eldest boy and the middle boy did not constitute manifest injustice or miscarriage of justice, hence plain error relief per Rule 84.13(c) is unwarranted.

It was Appellant's burden to demonstrate reversible error. *Missouri Health Facilities Review Committee v. Administrative Hearing Commission*, 700 S.W.2d 445, 451[10] (Mo. banc 1985). Neither of Appellant's points relied on warrants reversal.

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.